**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **KAREN S. ROWLAND,**<br>**on behalf of herself and**<br>**others similarly situated,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**TRANSWORLD SYSTEMS, INC.,**<br><br>**MRS BPO, L.L.C.,**<br><br>**CONVERGENT OUTSOURCING, INC.,**<br><br>**NATIONAL COLLEGIATE STUDENT**<br>**LOAN TRUST 2006-4,**<br><br>**NATIONAL COLLEGIATE STUDENT**<br>**LOAN TRUST 2007-4,**<br><br>**and**<br><br>**US BANK, NATIONAL ASSOCIATION,**<br><br>    **Defendants.** | **Civil Action No. 3:23cv258**<br><br>**AMENDED CLASS ACTION**<br>**COMPLAINT**<br>**AND**<br>**DEMAND FOR JURY TRIAL** |

## I.   INTRODUCTION

1.      This is a consumer class action brought under the Fair Debt Collections Practices Act, 15 U.S.C. 1601 (FDCPA), and the Virginia Consumer Protection Act, (VCPA), Va. Code 59.1-196, et seq, by the victims of a student loan scheme against the companies and persons that collected millions of dollars in loan payments from them.

2.      The Trusts were created between 2001 and 2007 for the purpose of acquiring private student loan debt.  The Trusts collectively own hundreds of thousands of private student loans with a face value of approximately $12 billion.  The Trusts do not have employees. Instead, all actions taken by the Trusts related to loan servicing and debt collection are performed by third parties.

3.      The Defendants have worked together and collectively orchestrated to collect and attempt to collect debts through unfair and/or deceptive methods of collection.

4.      This action concerns the unlawful actions including the debt collection practices of Defendants National Collegiate Student Loan Trusts 2006-4, 2007-4 ("Trusts" or "NCSLT Trusts") conducted by Transworld Systems, Inc. ("TSI") through debt collection law firms that TSI directs and controls under its "Agency and Attorney Network". TSI actions are taken under the control, direction and on behalf of U.S. Bank, National Association ("U.S. Bank") (collectively "Defendants"). Specifically, the Defendants knew but recklessly disregarded that:

    a.  The Defendants do not have the right to collect any sums from the Plaintiff and the Class members because the accounts lack the documentation necessary to prove the NCSLT Trusts' ownership of the loans.

    b.  The Defendants do not have the right to file claims, under the color of law, when they know they lack records,  the records they have are unreliable,  and the records are otherwise infected with inaccurate and incomplete information.

    c.  Notwithstanding this knowledge, as part of their pattern and practice of unfair, deceptive, or otherwise unconscionable debt collection practices, Defendants act through their affiliates and authorized agents to collect and attempt to collect on the hundreds and thousands of purported consumer debts they acquire for pennies on the dollar of what they claim is due.

5.      As a direct and proximate result of the Defendants' acts and omissions, the Plaintiff and Class members have sustained damages and losses in the form of (i) incurred costs to defend the Defendants' improperly pursued debt collection actions, (ii) payments made to the Defendants which were not lawfully owed, and (iii) stress, worry, frustration, and anxiety related to the Defendants' debt collection activities. Plaintiff and the Class members are also entitled to statutory damages.

## II.   PARTIES, JURISDICTION, AND VENUE

6.      Plaintiff Karen S. Rowland is a resident of the Commonwealth of Virginia and has been subjected to debt collection activities by the Defendants.

7.      Defendants National Collegiate Student Loan Trust 2006-4 and National Collegiate Student Loan Trust 2007-4 (collectively "NCSLT Trusts" or "the Trusts") are Delaware statutory trusts, formed and existing pursuant to the laws of the state of Delaware for the purpose of acquiring purported consumer debts.  The Trusts have no employees and there is an Owner Trustee, Wilmington Trust, and an Indenture Trustee, U.S. Bank. U.S. Bank also serves as the Special Servicer for defaulted Trust loans.

8.      The Trusts are treated as a single entity by the other Defendants.

9.      Defendant Transworld Systems, Inc. ("TSI") is a debt collector engaged in the business of a collection agency, using the mails and telephone to collect consumer debts, the principal purpose of which is the collection of any debt. TSI is a corporation under California law with principal offices at 500 Virginia Dr., Suite 510, Fort Virginia, PA, 19034-2733. TSI does business in Virginia, and its registered agent in Virginia is CT Corporation System, 4701 Cox Rd., Suite 285, Glen Allen, VA 23060-6808.  TSI is not licensed to practice law in the Commonwealth of Virginia.

10.      Defendant TSI is a debt collector as defined in the FDCPA. It regularly collects or attempts to collect debts, directly or indirectly, that are owed or asserted to be owed or due to others. Among the debts TSI collects that are alleged to be owed to others are so-called "private student loans" allegedly owed to the NCSLT Trusts.

11.      This Court has jurisdiction over TSI because TSI does business in Virginia by collecting or attempting to collect debts from Virginia residents. TSI directs and controls the actions of attorneys, who are part of its "Attorney Network" in the Commonwealth of Virginia. TSI also directs and controls the actions of collection agencies who are part of its "Collection Network". Therefore, TSI has obtained the benefits of the laws of Virginia, and it is subject to the jurisdiction of this Court.

12.     MRS BPO, L.L.C. ("MRS") and Convergent Outsourcing, Inc. ("Convergent") are both collection agencies. They are both hired by TSI to carry out part of its consumer collections business in the name of the Trusts. TSI operates and manages a Collection Network business unit that directs and controls the actions of various collection agencies, including the Defendants MRS BPO, L.L.C. and Convergent Outsourcing, Inc. MRS and Convergent each regularly collect or attempt to collect debts, directly or indirectly, that are owed or asserted to be owed or due to others. They both meet one or both prongs of the definition of "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"). This Court has jurisdiction over MRS and Convergent because they each do business in Virginia by collecting or attempting to collect debts from Virginia residents.

13.     Defendant U.S. Bank is a for-profit bank doing business in the Commonwealth of Virginia.

14.     U.S. Bank's role as the "indenture trustee" for the NCSLT Trusts is not related to its consumer banking activities whatsoever. U.S. Bank maintains that it currently has exclusive control over the actions of defaulted of the Trusts and not the Owner Trustee.

15.     U.S. Bank is currently the Special Servicer for defaulted Trust Loans because it was designated as the Back-Up Special Servicer to the Trusts under a Default Prevention and Collection Services Agreement First Marblehead Education Resources, Inc. ("FMER"), the initial Special Servicer resigned in 2012 and U.S. Bank assumed its role.

16.     U.S. Bank delegated the performance of its duties as Special Servicer for the Trusts to a company named Turnstile Capital Management, LLC ("Turnstile") who had direct oversight of TSI's actions for the Trusts. Despite its delegation of the performance of its duties, U.S. Bank remains responsible for the performance of its duties as Special Servicer, whether done by Turnstile, TSI, and in turn TSI's Attorney Network and Collection Network, or any other person involved in collecting loans allegedly acquired by the Trusts. U.S. Bank has the duty to properly supervise and control the activities of Turnstile, TSI, and TSI's Attorney Network and Collection Network, or any other person engaged in collection for the Trusts, as its

Page 4

agents, and thus is vicariously or directly liable for their wrongful conduct committed against Plaintiff and other Virginia consumers. In relation to the "private student loans allegedly" owned by the Trust, U.S. Bank, regularly collects or attempts to collect debts, directly or indirectly, that are owed or asserted to be owed or due to others.

17.     Asserting gross negligence and other actionable wrongful conduct, the NCSLT Trusts, by way of a Verified Amended Complaint sued U.S. Bank, Turnstile, and GSS Data Services, Inc., and made, among others, the following allegations, which, on information and belief, after investigation, Plaintiff asserts are accurate, and on information and belief reallege:

> Neither the Trusts nor the Owners approved these arrangements with Turnstile or with Transworld. To the contrary, the Owners specifically informed the Administrator and U.S. Bank that they did not want Turnstile or TSI to perform any services relating to the Trusts. But the Administrator and U.S. Bank refused to follow the instructions from the Owners. The Trust did not hire Turnstile or TSI, neither Turnstile nor TSI acts at the direction of the Trusts, and they do not follow any directions or instructions issued by the Trusts. To the contrary, as discussed below, while the Owners of the Trusts have requested that TSI cease filing lawsuits in the name of the Trusts where TSI cannot prove that the Trusts have standing to collect on defaulted loans, TSI has nevertheless continued to file such lawsuits.

> To the contrary, TSI is an agent of U.S. Bank as Special Servicer. Under the Special Servicing Agreement, U.S. Bank was responsible for 'the enforcement, collection and servicing of Delinquent Loans and Defaulted Loans. . . .

*See* **Exhibit A.**

18.     U.S. Bank's duties include monitoring the performance of Turnstile with the power to replace it if it is deficient or negligent in performing its duties.

19.     As set forth herein, Turnstile's performance of its duties is deficient and negligent, but U.S. Bank fails to monitor Turnstile's performance and has failed to replace Turnstile as Subservicer.

20.     The remainder of the allegations as they pertain to U.S. Bank in said Verified Amended Complaint establish that U.S. Bank is both in a position to and has a duty to prevent and avoid the unfair and deceptive acts and practices performed by TSI, and the attorneys from Transworld's Attorney Network acting in Virginia and elsewhere, that U.S. Bank knew of and was fully informed or willfully blind about the unfair and deceptive acts and practices being performed in Virginia and elsewhere. This includes knowledge of TSI maintaining and

controlling attorneys in its Attorney Network by which TSI has engaged in the unauthorized

practice of law in Virginia. as TSI controls and directs the actions of the attorneys allegedly hired

on behalf of the Trusts through written agreements.

21.     U.S. Bank is in a position to and has a duty to prevent and avoid such unfair and

deceptive acts and practices and unauthorized practice of law described in ¶ 20 of this amended

complaint. Its failure to do so proves that U.S. Bank negligently and/or grossly negligently

and/or intentionally, failed to prevent such unfair and deceptive acts and practices and

unauthorized practice of law in Virginia and elsewhere. In fact, it aided, abetted, and approved

the commission of such unfair and deceptive acts and practices and unauthorized practice of law

in Virginia and elsewhere by TSI through and by the attorneys retained by TSI to act in the name

of the NCSLT Trusts in Virginia and elsewhere.

22.     The doctrine of respondeat superior applies to U.S. Bank and its own acceptance of

contractual duties as the Indenture Trustee and Special Servicer renders it responsible for the

wrongful conduct in Virginia and elsewhere as herein alleged and for the wrongful actions of

Turnstile, AES, TSI, members of TSI's Attorney Network or any other persons engaged in

collection for the Trusts in Virginia and elsewhere as its agents. Additionally, U.S. Bank is

responsible for  certain of those actions it has ratified by its own conduct.

23.     Paragraphs 71 through 79 of the said Verified Amended Complaint establish that

U.S. Bank, TSI and others were fully aware, that the (variously Schedule 1, Schedule 2, or

Schedule 3; collectively the "Loan Schedules") Loan Schedules do not exist. Despite that

knowledge, TSI, with the knowledge and consent of U.S. Bank, has continued in many cases, in

Virginia and elsewhere, to file affidavits and/or declarations under oath which falsely and

knowingly testify that such schedules do exist, that the affiant or declarant has personal

knowledge of their existence and alteration of original documents by attaching documents that

were not part of the original agreement and documents that were prepared for litigation.

24.     Paragraphs 80 through 85 of said Verified Amended Complaint set forth examples

of case authority and rulings which establish that U.S. Bank and TSI knew that the declarations

and affidavits submitted to support claims made in the name of the NCSLT Trusts concerning loan documentation were false, and that altered documents were being presented as original documents to support claims and allegations as to which the Trusts owned a specific loan were done through speculation and not based on personal knowledge. The allegations in the Verified Amended Complaint are consistent with the findings of government agency investigations including those from New York, Massachusetts, and Connecticut, and the Servicer Performance Report of the Pennsylvania Higher Education Assistance Agency ("PHEAA"), a servicer of performing loans the Trusts allegedly own.

25.     In fact, TSI created false and forged documents purporting to reflect the Loan Schedules from the original "Pool Supplement Agreements" and TSI, through its employees and through its Attorney Network and Collection Network. In litigation against consumers, TSI falsely represented, through false affidavits and/or declarations, and through false statements in pleadings, testified or asserted that such documents were genuine and original loan documents when they were not. The  affiant or declarant also claimed to have personal knowledge or attested to their authenticity while lacking any legal basis to do so. Additionally, TSI, through its Collection Network, engaged in the collection of debts through false communications, collection calls and delinquent credit reporting where it asserted that the debts were collectible even though they lacked basis to collect because it could not prove the Trusts had legal ownership of the private student loans.

26.     The foregoing statements made in, or summarized from, the said Verified Amended Complaint constitute admissible evidence under Virginia Evidence Rule 2-801(d)(2).

27.     U.S. Bank is also fully aware of the TSI Consent Order issued by the Consumer Financial Protection Bureau ("CFPB"), the other government investigations, and findings regarding its unfair and deceptive acts and practices, including violations of the FDCPA and VCPA. U.S. Bank permitted, consented to, and aided and abetted those unfair and deceptive acts and practices performed by TSI on behalf of the Trusts.

28.   The CFPB found in the TSI Consent Order that employees of TSI falsely claimed personal knowledge of facts relating to transactions regarding the Trusts that occurred well before TSI had any involvement. Since TSI lacked any knowledge related to past events, and those who had knowledge ceased any actions done for the Trusts in their ordinary course of business soon after the  contractual agreement with  TSI to engage in debt collection for the Trusts, there was nothing TSI could do to acquire personal knowledge of the events. Nonetheless, TSI has continued to present affidavits and testimony of employees claiming personal knowledge of these past events when they  have none.

29.   U.S. Bank was, and is, bound by the TSI Consent Order issued by the CFPB because TSI performs services contractually assumed by U.S. Bank as Special Servicer. In fact, that order imposed both affirmative and prohibitory duties on U.S. Bank, and U.S. Bank has failed and/or refused to act in accordance with its duties under said TSI Consent Order. The failure of U.S. Bank to act in accordance with its duties under the TSI Consent Order, and to ensure and enforce TSI's compliance with that Consent Order, establish that US Bank's consent to, and aiding and abetting in the commission of unfair and deceptive acts and practices by TSI, were willful and knowing.

30.   U.S. Bank is not a creditor under the FDCPA because the debts it attempts to collect were not debts offered by it or originated through an extension of credit to whom a debt is owed. It is a debt collector in its role as the Special Servicer for defaulted debts allegedly owned by the Trusts since it regularly, directly or indirectly, collects debts that it did does not own and are alleged to be due another.

31.   Wilmington Trust Company serves as the "Owner Trustee" for the Trusts acting solely on behalf of the investors who purchase offered notes or shares of the Trusts. Wilmington Trust's role in the trusts is not related to consumer banking activities whatsoever.

32.   At all times relevant to this Complaint, TSI has acted as the debt collector on behalf of the Trusts and the Trusts, through its Trustees, expressly authorized TSI to carry out all work that it has done on their behalf.

33.     The Trusts each have an organizational structure that exercises immediate control over the Trusts' activities through Trustees, who have regular meetings in various offices, and decide how to conduct the affairs of the Trusts' business in Virginia and elsewhere.

34.     The Trusts also work to carry out their business activities through a group of affiliates, partners, and agents but never engage, direct or control lawyers to act on behalf of the Trusts, leaving that to TSI.

35.     The Trusts are "debt collectors" since they do not qualify as "creditors" under the FDCPA because (i) the debts they attempt to collect were not offered by them or originated through extensions of credit  to whom a debt is owed; (ii) it is not an assignee of the alleged student loans; and (iii) it uses a name other than their own as the original creditor, which indicates that a third person is collecting or attempting to collect such debts and therefore it meets the definition of a debt collector under the FDCPA.

36.     This Court has jurisdiction over TSI, MRS, Convergent, the NCSLT Trusts, and U.S. Bank because they do business in Virginia by collecting or attempting to collect debts from Virginia residents who they allege owe debts to the Trusts. Therefore, Defendants have obtained the benefits of the laws of Virginia (without the right to do so), and Defendants are subject to the jurisdiction of this Court.

37.     Venue is proper in this District and Division because a significant part of Plaintiff's claims occurred here, and all Defendants transact business here.

### III.   FACTUAL BACKGROUND

#### A.     Origination of the Loans

38.     An entity known as First Marblehead Corporation ("FMC") saw an opportunity to make high-cost, high interest rate purported student loans (for purposes generally not for tuition or actual educational expenses). It was bundling private student loans into securities, and paying interest to investors who would finance them, allowing FMC to profit over 1.2 billion dollars from the sale of these high cost purported student loans. The same model of securitization in the mortgage industry that led to the Great Recession of 2008.

39.     FMC did not have the reputation, credibility, or ability to attract consumer borrowers and even if it did, it could not do so because it would become subject to complying with the laws in each state as a non-bank entity.

40.     To avoid these consequences and regulations, FMC devised a business plan by which it would entice national banks to lend their charters to a marketing operation to be conducted by FMC for FDIC insured national banks. Other than lending their name, the banks had no meaningful involvement or risk in the loans. FMC itself identified this "rent a charter" scheme as a potential liability issue in its own 2007 annual report. *See* **Exhibit B**.

41.     As part of its rent a charter scheme, FMC enlisted a purported non-profit entity to act as the guarantor for the high cost loans which would allow FMC to convince the banks there would be little risk arising out of the loans. Specifically, FMC convinced The Education Resources, Inc. (TERI) to be the guarantor for any purported student loans that later went into default.

42.     FMC convinced TERI to become involved, because, like the arrangement with the banks, FMC promised it would do all the work connected with the marketing and generation of the loans. To this end, FMC and TERI entered into a series of management agreements that included managing some of the database operations for TERI. TERI would become the depository of the original documents relating to the loans made in the names of the participating banks and grant limited access of its database to FMC.

43.     In 2008, the Great Recession hit, and TERI filed bankruptcy (in part because the toxicity of the high cost loans arranged by FMC led to massive defaults). The relationship between FMC and TERI disintegrated and eventually a lawsuit between TERI and FMC was filed in the bankruptcy court post-bankruptcy and gave control over TERI's loan database to TERI. *See* **Exhibit C**. This created a problem for FMC that FMC never foresaw: when TERI ended the relationship and retained the records related to the loans it owned under the arrangement created by FMC, FMC no longer had access to the actual loan records.

44.     The FMC arranged loans that are the subject of this action were <u>allegedly</u> assigned to fifteen Delaware statutory trusts (collectively referred to as the "Trusts") who are among the defendants in this action. None of the Trusts have any employees. They all are treated the same by their co-Defendants and other than a numeric designation, there is nothing to distinguish between the Trusts.

45.     A number of Non-Trust parties collectively acted directly or indirectly in the name of the Defendants.

**B.      U.S. Bank's Role in Debt Collection for the Trusts**

46.     U.S. Bank serves two roles in connection with the Trusts. First, it is the Indenture Trust of the Trusts. It serves as the Indenture Trustee for a series of Indenture Agreements that were created as part of the transactions for the benefit of the purported investors/note holders. Second, it is the Special Servicer for the Trusts.

47.     As the Special Servicer, U.S. Bank is responsible for the collection of the loans allegedly held by the Trusts. It is in this second role as Special Servicer that the claims are asserted against it by the Plaintiff and putative class members in this action since it is the ultimate decision maker and controller of the collection actions pursued on behalf of the Trusts (whether those decisions are made directly or indirectly through a servicer, subservicer or the people they hire, including attorneys, to collect on behalf of the Trusts). It is true that U.S. Bank has placed intermediaries between it and others in the collection chain commanded by U.S. Bank, but it remains in legal and ultimate control no matter how long the chain of parties engaged in collecting on behalf of the Trusts may become.

48.     U.S. Bank continues to have responsibility for the records associated with the loans, which are the foundation for any collection actions taken in the name of the Trusts and the focus of this action. U.S. Bank's reservation of responsibility is demonstrated by U.S. Bank providing indemnification to the servicer (and others) for the information or materials provided to the servicers/collectors for their use in their collection and services. *See* **Exhibit D.**

49.     The documents provided to the servicers under their servicing agreements are very narrow and limited to the "Original Credit Agreement" which refers to the signed first or first two pages of the Credit agreement and related documents. There is no requirement to provide the servicer the terms and conditions of the Credit Agreement, and there is no mention to provide any documents relating to the assignments of the Credit Agreements.

50.     As the Third Circuit noted in *In re National Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1, 2005-2, 2005-3*, 971 F.3d 433, 440 (3rd. Cir. 2020), "The Basic Documents at the outset did not provide for servicing loans delinquent in their payments because The Educational Resources Institute Inc. (the "Resource Institute") guaranteed full repayment on those loans. After that entity's bankruptcy in 2008, however, the Trusts established a regime for servicing delinquent student loans."

51.     As the Special Servicer, U.S. Bank provides certain services for loans that are either delinquent for more than thirty days or deemed to be in default. Among other services to the Trusts U.S. Bank does the following:

        a.      Retains debt collection agencies known as "Subservicers" to enforce and collect delinquent and defaulted student loans;

        b.      Audits the Subservicers and provided oversight with respect to account management, litigation assistance, and settlement strategies;

        c.      Replaces any Subservicer whose performance is deficient;

        d.      Requires each Subservicer to submit monthly reports relating to the loans on which the Subservicer is collecting; and

        e.      Retains responsibility for the information relating to the loans through indemnification liability.

52.     U.S. Bank has also actively participated in litigation concerning the right to control the collection activities of the Trusts and determining who may collect on behalf of the Trusts. U.S Bank was a party and appealed an adverse decision against the Trusts in *In re National Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1, 2005-2, 2005-3*, 971 F.3d 433

(3rd. Cir. 2020). It continues to participate, after intervening, in a District Court action, *Consumer Financial Protection Bureau, Plaintiff, v. National Collegiate Master Student Loan Trust et al., Defendants*, No. 1:17-CV-1323-SB, 2021 WL 5936404 (D. Del. Dec. 13, 2021), motion to certify appeal granted sub nom. *Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Tr.*, No. 1:17-CV-1323-SB, 2022 WL 548123 (D. Del. Feb. 11, 2022), which adopted that its role as a special servicer was "to collect "past due and defaulted student loans" and to do "collections litigation." *Id.* at *1.

53.     U.S. Bank has also moved to intervene claiming a right to do so in actions against certain Trusts that sought to limit the rights of the Trusts to pursue collection actions or use particular collectors.

54.     Yet, despite its voluntary involvement in litigation concerning the collection actions filed in the name of the Trusts, U.S. Bank regularly claims it has no involvement and is far removed from collection activities based on contractual terms of the Special Servicing Agreement governing its involvement. U.S. Bank's interpretation of a limited role conflicts with the finding by the Third Circuit that "[t]he Special Servicing Agreement further provided that Defaulted Loans are serviced exclusively by the Special Servicer. …"  The Third Circuit also noted that the contention that collection lawsuits filed in the names of the Trusts were "lawsuits filed by U.S. Bank on behalf of the Trusts against borrowers for collection on Defaulted Loans were dismissed due to faulty documentation and procedures." *In re Nat'l Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1, 2005-2, 2005-3,* 971 F.3d 433, 440 (3rd. Cir. 2020)

55.     U.S. Bank's decisions to intervene or voluntarily participate in litigation concerning the collection actions, including collection suits, shows its direct and indirect involvement in the management and control of the Trusts' collections activities in its role as Special Servicer.

### C.     Servicing of the Loans

56.     TERI was to provide the Original Credit Agreement it had possession of to a servicer hired for the Trusts known as the Pennsylvania Higher Education Assistance Agency

("PHEAA") who was doing business as American Education Services ("AES"). AES is the servicer for nearly all of the performing loans that the Trusts claim to own.

In a Service Performance Report of PHEAA/AES in 2015, an independent reviewer, Boston Portfolio Advisers concluded TERI failed to deliver essential documents, and AES had no way of knowing what they had not received. AES also failed to have any personal knowledge concerning any of the records. *See e.g.*, New York Times Article, National Collegiate's Audit of P.H.E.A.A July 17, 2017, found within "*As Paperwork Goes Missing, Private Student Loan Debts May Be Wiped Away,*" https://www.nytimes.com/2017/07/17/student-loan-debt-collection, last visited on July 9, 2023 ("The beneficial owner of National Collegiate's student loan trusts conducted an audit of the loans' servicer. Crucial paperwork needed to collect on the loans in court is missing, according to the auditors' report.") The audit conclusions verified that:

> **100% of the accounts (randomly selected) did not contain an Assignment**. It is unknown whether Assignments were appropriately issued. Based on the representations made by PHEAA (another acronym for AES) it is likely that the assignments do not exist. (emphasis added).

57.     The Servicer Performance Review also prophetically concluded "[w]ithout appropriately issued Assignments, collection efforts are more challenging and costly to defend in Court."

58.     AES's lack of documentation was unsurprising since if a loan it was servicing went into default, it would notify TERI of the default and TERI could confirm any details it needed to confirm since it held the database and related records.

59.     With TERI's bankruptcy, the Defendants and AES lack documentation or any ability to authenticate documents leaving AES and all collectors relying on AES's second hand information to show the Trusts' ownership of any individual loan accounts. They also lack any ability to prove which Trust owns which individual loans.

60.     AES is unable to prove which Trust owns which individual loans. AES's lack of knowledge also extends to knowing which loans are allegedly owned by which NCSLT Trust. The Servicing Performance Report also noted that:

> PHEAA [a/k/a AES] is not aware of the criteria FMC used for assigning a batch of loans to any given trust except the general knowledge that FMC was able to package loans to appeal to investors. PHEAA would change the owner on its system upon notification from FMC. Loans were not bundled by disbursement year or period (i.e. the 2007 trust does not contain all loans originated in the 2006-2007 academic year) and the criteria that FMC used to formulate the trusts was never disclosed to PHEAA. The first trust (National Collegiate Master Student Loan Trust) was replenished with 6 independent securitizations from 2001 to 2006, while the other 14 trusts were one and done transactions. The early disbursements were all direct to consumer and mainly with Chase Bank and Bank One.

61.     All collectors relying on AES's information lack proof to show the Defendant NCSLT Trusts' ownership of any individual loan accounts. They also lack any ability to prove which NCSLT Trust allegedly owns which individual loans.

62.     But AES and the other Defendants, the attorneys in TSI's Attorney Network and the collectors in TSI's Collection Network acting on behalf of the Trusts nevertheless claim to have knowledge of the individual loans and what Trust owns which individual loan when AES has incomplete and deficient records to support any such claims. The various collectors, and the Defendants in this action, also claim to have personal knowledge of information concerning the individual loans and alleged transfers of individual loans when none of them had any direct relationship or records that would provide any basis for personal knowledge of the individual loans the Trusts claim to own.

63.     TSI relies on information from AES when it seeks to collect upon the loans of Plaintiff and putative class members and direct the attorneys in TSI's Attorney Network and the collectors in TSI's Collection Network.

64.     TSI was appointed as special subservicer of the 15 National Collegiate Student Loan Trusts.  As special subservicer, it is subject to the control of U.S. Bank for whom it acts. Both U.S. Bank and TSI have been identified as agents of the Trusts by other agents of the Trusts.

65.     As special subservicer, TSI oversees the collection of student loans that go into default. Only after a loan has gone into default is TSI first granted "access" to AES's records, the same incomplete and materially deficient records as explained above.

66.     TSI's involvement in relation to the Plaintiff and putative class members and their purported loans, is after default and its default efforts include mass litigation in state courts when it knows the AES records it relies on are incomplete and materially deficient. TSI also alters documents that it files before Courts as explained below without disclosing to the state courts it has done so. And, TSI presents affidavits that falsely claim personal knowledge of facts when the affiants lack personal knowledge.

67.     TSI knows that to convince borrowers or enforce the loans before courts, it would have to present competent and admissible evidence.

68.     But the series of events described above leave TSI with incomplete and deficient records or any ability to credibly claim any personal knowledge since it was not involved in the origination or alleged assignment of the loans through the Pool Supplements with the missing loan schedules, and reliance on AES's incomplete and insufficient records to prove the Trusts' ownership of any loans is inadequate.

69.     The natural consequences of attempting to collect in the courts without the required proof that is required of every other party in a similar position cannot be overcome.

70.     TSI tries to overcome the lack of admissible evidence by preparing and submitting affidavits by its employees that say they are based on "personal knowledge" when they are not.

71.     TSI's collection practices of knowingly and willfully using affidavits that are wrongfully claimed to be based on personal knowledge were addressed by the federal Consumer Financial Protection Bureau. That public enforcement action identified the defects in TSI's efforts to collect the student loans in a September 15, 2017, Stipulation and Consent to the Issuance of a Consent Order ("Transworld Stipulation") and a Consent Order in the matter of Transworld Systems, Inc. as a result of actions taken on behalf of the fifteen trusts operated by NCSLT and

Page 16

for which Wilmington serves as Trustee ("Transworld Consent Order"), filing both in 2017-CFPB-0018.[1] *See* **Exhibits E and F**.

72.    The Transworld Consent Order was issued specifically as to TSI's unfair and deceptive acts and practices on behalf of, or in the name of, the Trusts and NCSLT. The Transworld Consent Order is both remedial and mandatory, and identified and prohibited many of the unfair and deceptive acts and practices of TSI on behalf of, or in the name of, the Trusts and NCSLT.

73.    In the Transworld Consent Order, the CFPB found that TSI and its nationwide network of law firms committed a number of offenses between November 1, 2014, and April 25, 2016, including:

　　　　a.    Filing tens of thousands of collections lawsuits against borrowers in which they did not possess the complete documentation needed to prove the NCSLT Trusts owned the loans;

　　　　b.    Filing tens of thousands of affidavits in support of collections lawsuits in which the affiant swore they had personal knowledge of the debt, when in fact the affiants frequently merely reviewed data on a computer screen, did not know the source of the data or how it was collected and maintained, and lacked knowledge of the chain of assignment records necessary to prove that the relevant Trust owned the loans; and

　　　　c.    Filing numerous lawsuits without the intent or ability to prove the claims, if contested.

74.    The Transworld Consent Order further found that these acts constituted violations of the Consumer Financial Protection Act, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

75.    The Consent Order also referenced the supervising role to be played by the Special Servicer, U.S. Bank, to issue directives to TSI, including that TSI make certain disclosures in

---

[1] https://files.consumerfinance.gov/f/documents/201709_cfpb_transworld-systems_consent-order.pdf, last visited on July 9, 2023.

connection with debt collection efforts in the name of the Trusts, to withdraw any affidavits or collection suits, provide information to the Special Servicer. Consent Order at ¶ 51.

76.    Despite the Consent Order, TSI has continued to conduct "business as usual" and engage in the same wrongful behavior.

77.    TSI also provides documents that are prepared for litigation and that are filed in court actions in the names of the Trusts. These documents include adding documents to various agreements. The primary document that allegedly shows that the Trusts have interests are Pool Supplements. The Pool Supplements reference a schedule of loans that is attached to the Pool Supplement Agreement. Since TSI does not have the loan schedules that were attached to the Pool Supplement Agreements, TSI has instituted the use of what it calls a placeholder – a document that claims that the listing of the loans being transferred are on file with FMC or the Indenture Trustee, depending on the Trust. This is not part of the original agreement but has been added to the document to leave the false, unfair, and deceptive impression to the Plaintiff, putative class members, and the state courts that the Trusts have a valid interest in the loans when they do not.

78.    Since the "placeholder" does not identify any specific loans, TSI adds an excerpt of an additional document that it attaches to the Pool Supplement labeled a "roster." This is not a document included as part of the original Pool Supplement transferred from anyone to the Trusts. It simply is manufactured to give it that appearance.

79.    TSI's practice of attaching this "roster" document has been addressed by the New York Attorney General that found the roster "is a document TSI created for the specific litigation by copying identical text and data from a large spreadsheet with multiple accounts and pasting it into a new account-specific document"… [and] "TSI's description of a newly-created document as a "redacted" version of the original document may confuse consumers about the nature and legal status of the debt, impede consumers' ability to respond to the lawsuit, and influence consumers to settle rather than litigate (or to settle on less favorable terms than they would

otherwise accept). *See* New York Attorney General Assurance of Discontinuance at ¶¶ 21 and 22.
[2]

80.     TSI also represented in that Assurance "that TSI has ceased identifying excerpts of
loan rosters cut and pasted into new documents as "redacted" versions of original loan rosters."
*Id.* at ¶ 23. That representation is untrue, since TSI continues to alter the Pool Supplement
documents in court proceedings against the Plaintiff and putative class members by adding rosters
to it and pretending the roster is part of the original document when it is not.

81.     TSI's designation of which Trusts claim to own a particular loan is nothing more
than guesswork since TSI (nor AES) has any actual knowledge, personal or otherwise, as to the
ownership of any individual loans by any particular Trust.

82.     This practice by the Trusts with the approval, knowledge, and consent of U.S.
Bank as Special Servicer, and TSI as Special Subservicer has been confirmed by the investigation
of its practices by Massachusetts Attorney General[3] which concluded:

> 37. Transworld executed certain Affidavits for use in Collection Lawsuits that
> stated a particular student loan was owned by a Trust, when, in fact, Transworld
> did not possess sufficient documentation to establish the chain of title of the
> particular loan.
>
> 38. From November 1, 2014 through April 25, 2016, Transworld's representations
> contained in certain affidavits had the tendency to mislead Consumers to believe
> that Transworld and Law Firms representing the Trusts possessed the relevant
> documentation sufficient to support the assertions in the Affidavit and that the Debt
> was valid and accurate.

83.     Given the uncertainty of what Trust allegedly owns which individual loan, the
Trusts are generally treated as a single entity in all non-litigation collection efforts. The same

---

[2] The document is available at https://ag.ny.gov/sites/default/files/09.11.2020_tsi_aod_final.pdf,
last visited on July 9, 2023.

[3] The document is available at https://www.mass.gov/doc/transworld-systems-aod/download,
last visited on July 9, 2023.

acronyms, e.g., NCSLT or NCT, are used in communications with borrowers and in reporting the loans to consumer reporting agencies.

84.    The Defendants have worked in concert together and collectively orchestrated the means and methods of collection to unfairly, deceptively, and illegally collect and attempt to collect allegedly owed debts from the Plaintiff and class members. In addition to the facts found by the investigations discussed above, the issue of the Trusts' reliance on claims of personal knowledge made by employees of TSI has already been litigated in courts and resolved against the Trusts by a court of competent jurisdiction in a decision with the Plaintiff that estops the Defendants from contesting their liability for pursing collection lawsuits without sufficient or competent evidence to sue individuals.

85.    TSI also engages in the unlawful practice of law in the Commonwealth of Virginia as it manages, directs and controls attorneys in its Attorney Network when the attorneys are acting in name of the Trusts.

**D.    Allegations Regarding Defendants' Practices Generally**

86.    The NCSLT Trusts are in the business of allegedly purchasing and taking assignment of student loan credit accounts originally extended by other creditors, which they then seek to enforce against the borrowers through collection letters, lawsuits, and post-judgment collection efforts. This is their principal business.

87.    In the course of their business, the NCSLT Trusts have allegedly purchased and taken assignment of numerous student loan credits accounts originally extended by banks or others to Virginia consumers which were primarily for personal, household, or family purposes.

88.    In the course of their business, the NCSLT Trusts have enforced their allegedly assigned accounts against Virginia consumers through servicing, collection letters, lawsuits, and

post-judgment collection efforts. The NCSLT Trusts rely on the other Defendants for these efforts since they do not have employees.

89.     While the Defendant NCSLT Trusts claim to have purchased student loan credit accounts, they cannot show that they are assignees of any particular loan and instead use false or misleading statements in the course of their collection efforts consisting of demands, invoices, statement, dunning letter or lawsuits.

90.     By allegedly purchasing and taking assignment of the accounts, NCSLT Trust Defendants acted as debt collectors and engaged in debt collection.

91.     During all times relevant to this action, the NCSLT Trust Defendants who have no employees and act through others.

92.     TSI, acting on behalf of the NCSLT Trusts, also had control over Convergent and MRS as debt collectors in their Collection Network.

**E.     Plaintiff Rowland**

93.     In 2006, Rowland entered into a student loan agreement co-signed by her brother William Stanfield for $15,000 with Bank of America, N.A. ("BofA Loan").

94.     The BofA Loan was for personal, family, or household purposes.

95.     In 2007, Rowland entered into another student loan agreement co-signed by her brother William Stanfield for $20,000 with JP Morgan Chase Bank, N.A. ("Chase Loan").

96.     The Chase Loan was for personal, family, or household purposes.

97.     Defendants' continued collection attempts caused Plaintiff to make some payments to them for the BofA Loan, but she has not made any payments since at least 2014.

98.     Rowland never made any payments on the Chase Loan.

99.     On December 6, 2016, Rowland was sued by National Collegiate Student Loan Trust 2007-4 in the Circuit Court for the City of Petersburg in Virginia, Case No. CL16-829

alleging that Rowland owed $32,153.45 for a loan that allegedly originated with JP Morgan Chase Bank, N.A.

100.    The affidavit signed by Jacqueline Jefferis, an employee of Transworld Systems Inc. ("TSI") alleges that the principal balance on the loan is $27,728.23, with accrued interest of $4,425.22, for a total of $32,153.45 as of 8/15/2016. A copy of the complaint and affidavit in support is attached hereto as **Exhibit G**.

101.    The National Collegiate Student Loan Trust 2007-4 Complaint was dismissed without prejudice on October 13, 2017. *See* **Exhibit H**.

102.    On December 8, 2016, Rowland was sued by National Collegiate Student Loan Trust 2006-4 in the Petersburg General District Court for the City of Petersburg in Virginia, Case No. GV16006509-00, alleging that Rowland owed $22,540.18 for a loan that allegedly originated with Bank of America, N.A. in September 2006.

103.    The affidavit signed by Jacqueline Jefferis, an employee of Transworld Systems Inc. ("TSI") alleges that the principal balance on the loan is $20,285.36, with accrued interest of $2,254.82, for a total of $22,540.18 as of 08/15/2016. A copy of the Warrant in Debt and affidavit in support is attached hereto as **Exhibit I**.

104.    The National Collegiate Student Loan Trust 2006-4 Complaint was dismissed without prejudice on March 21. 2018. *See* **Exhibit J**.

105.    In September 2021, Rowland started receiving phone calls from Cassandra Baldwin who claimed to work for Convergent who was attempting to collect money on a loan co-signed with William Stanfield that originated in 2006.

106.    On September 24, 2021, Casandra Baldwin from Convergent called and pressured Rowland to make a payment on a loan they claim originated with a balance of $15,000 but with interest charges was now $28,000. She also mentioned the names Transworld Systems, Inc and

National Collegiate. She offered a settlement down to $16,000 and claimed no payments had been made on the loan since 2013.

107.    In a letter dated September 25, 2021, Convergent sent a letter to collect on a debt allegedly owed to National Collegiate Student Loan Trust 2006-4 in the amount of $28,244.23 with interest of $43.32. The letter offers a settlement of $16,946.54.

108.    The affidavit filed with the warrant described in ¶ 103 states that "No Payment has been made since 05/28/2014." *See* **Exhibit I**, Affidavit at ¶ 10.

109.    On the back of the letter, Convergent includes a notice that due to the age of the debt, National Collegiate Student Loan Trust 2006-4 cannot sue Rowland or report the debt to a credit reporting agency. Convergent gave no explanation as to why interest is still accruing on the loan.

110.    On September 27, 2021, Rowland received another call from Ms. Baldwin of Convergent stating that the loan total was $28,000 but could possibly be reduced to $16,946.54 and if there was a hardship to $11,300.00 if assessed before October 1st. Rowland asked for the address and fax number and was given Convergent Outsourcing, Inc., 800 Southwest 39th St., Renton, WA 98457 and a fax number of 1-206-223-5313.

111.    In early November 2021, Ms. Baldwin called Rowland's husband's cell phone asking for Karen Rowland. Her husband told her she had called the wrong number and ended the conversation.

112.    Rowland's husband had finished a surgery, and Rowland was taking care of him in recovery. She also regularly takes care of her father, who has Alzheimer's.

113.    Convergent then started calling her place of employment, calling three times in October and four times in November. Rowland was unable to talk to them each time they called her at work.

114.   Each collection call attempted to coerce Rowland to make a sizable payment on the alleged loan, and Ms. Baldwin became increasingly assertive with each successive communication.

115.   In general, Rowland's life is full of obligations with commitments to family and work and these calls sent her over the edge. She felt she was losing control of everything and was unable to focus at work and at home as a result of the collection calls.

116.   Due to her persistent behavior, the calls caused Ms. Rowland to become extremely nervous which led her to experience intense anxiety.

117.   In March 10, 2022, Rowland received a collection letter from Transworld Systems, Inc. ("TSI") regarding a loan it claimed was originated by Chase and currently held by National Collegiate Student Loan Trust 2007-4.

118.   The TSI letter claimed that the principal owed is $27,728.23. It also claims that interest accrued on the loan in the amount of $15,293.82 with a total balance due of $43,022.05. The current interest rate is 0.00 with collection costs of 0.00.

119.   The letter also offers three offers of settlement and says that the account is still accruing interest even though it also says the current interest rate is 0.00.

120.   Sometime after April 15, 2022, Rowland received a letter from MRS BPO, L.L.C., a debt collector ("MRS").

121.   The letter alleged that Rowland owed National Collegiate Student Loan Trust 2006-4 $20,285.36 as of 3/09/22 and accumulated interest of $8,243.74 from 3/09/2022 until April 12, 2022, for a total balance owing of $28,469.10.

122.   She also received several calls from MRS to collect on the debt.

123.   On April 19th and 22nd, MRS called her co-worker, Vachelle Beals to collect on a debt allegedly owed by Rowland and William Stanfield.

124.     Due to the conversation between MRS and Rowland's co-worker, Vachelle Beals kept asking her questions about the alleged debt which affected her reputation at the company and made her feel completely overwhelmed and harassed. Ms. Beals told Ms. Rowland how they were being very inquisitive and persistent which only added to her already stressful mindset from the previous phone conversation with MRS.

125.     Ms. Rowland also felt very anxious and nervous at work as a result of these phone calls.  The conversations with MRS, regardless if it was made directly to her or to her co-worker, interfered with her ability to focus on work and family life.

126.     As a result of Defendants' unlawful actions, Plaintiff has suffered an ascertainable loss, specifically the amount that Plaintiff paid Defendants towards the Chase Loan when the Defendant NCSLT Trusts were unable to show it was assigned this loan.

127.     In late April and in May 2022, calls from MRS continued to her cell phone and at her workplace.

128.     On May 12, 2022 and May 31, 2022, Rowland took calls from Mr. Bunton who claimed to work at MRS. He asked for her social security number and informed her that he was collecting on a debt that originated for $15,000 and that $28,469.10 was now owing with the last payment made on May 20, 2014. He offered a discount to settle the debt for $8,545.00.

129.     On May 23, 2022, MRS also called and again talked to Ms. Rowland's co-worker Vachelle Beals asking for Ms. Rowland and saying he would call again later.

130.     In June 2022, MRS sent Ms. Rowland a letter to collect a debt for National Collegiate Student Lona Trust 2006-4, alleging that it originated with BofA, was incurred on September 20, 2005 for $20,285.36 and had an account balance as of June 8, 2022 of $28,469.10. The letter also made a one-time offer of $14,235.00 to resolve the account and attached documentation. A copy of that communication is attached hereto as **Exhibit K**.

Page 25

131.    Thereafter, Ms. Rowland continued to receive phone calls and voice messages from MRS.

132.    Telephone calls and voice messages continued from MRS on June 17, 2022, June 20, 2022, July 11, 2022, July 13, 2022, August 5, 2022, September 12, 2022 and October 17, 2022.

133.    Ms. Rowland continued to receive collection letters from MRS dated July 11, 2022, July 13, 2022, August 5, 2022, September 12, 2022, October 17, 2022 and February 13, 2023. Some included collection for NCSLT 2006-4, some were for NCSLT 2007-4 and some were for both.

134.    Ms. Rowland sought the assistance of an attorney and paid him money to investigate these alleged debts.

135.    Each collection made by Defendants involved false claims and were wrong and illegal.

136.    Ms. Rowland claims the letters and debt collections calls claiming that any amount was due and owing to National Collegiate Student Loan Trust 2006-4 and/or National Collegiate Student Loan Trust 2007-4 was both false and unfair, as all information relayed to Rowland claimed that no payment had been made on either debt from 2013 or 2014 respectively, putting the debt well beyond the statute of limitations for collection. In none of the conversations between Ms. Rowland and the collectors did the collectors ever advise that the claims were time barred

137.    Despite this, the communications from MRS and TSI failed to inform Ms. Rowland that they could not legally sue her to collect the debt.

138.    Furthermore, National Collegiate Student Loan Trust 2006-4 and 2007-4 do not own the alleged debt, nor can it produce evidence that any debt is owed.

139.    National Collegiate Student Loan Trust 2006-4 alleges that it purchased the account directly from Bank of America, however, according to their own documents produced, there is no support for this assertion.

140.    Stated simply, even if Rowland at one time owed someone money, that money is not owed to National Collegiate Student Loan Trust 2006-4 and/or 2007-4.

141.    As a result of Defendants' actions detailed above, Plaintiff had to retain counsel to ascertain their legal rights and responsibilities, incurring legal fees and out of pocket expenses along the way.

142.    Ms. Rowland has suffered financial uncertainty and unease, and emotional distress as they deal with a series of debt collectors who act as though they are unencumbered by applicable law.

143.    Defendants' collection or enforcement of the Chase Loan and BofA Loan, whether they were actually acquired by the Defendant NCSLT Trusts or not, was unauthorized and unlawful because Defendant NCSLT Trusts does not have the legal right to enforce any student loan against Ms. Rowland since it was unable to show that it was assigned the loan.

## IV.    CLASS ALLEGATION

Plaintiff Karen Rowland also sues on behalf of others, pursuant to Fed. R. Civ. P. 23, who are similarly situated to Ms. Rowland as a Virginia Class. This Class of similar persons are defined as follows:

    a.    **Virginia Class: Those persons in the state of Virginia** whom the Defendant Trusts have communicated with, directly or indirectly, for the purpose of collecting a purported student loan owned by a Trust since April 15, 2022.

144.    Excluded as members of the Virginia Class are any persons who fall within these definitions if the person is (i) an employee or independent contractor of any of the Defendants, (ii)

a relative of an employee or independent contractor of any of the Defendants, or (iii) is an employee of the Court where this action is pending.

145.    The Class definition may be amended or modified. Subclass(es) may also be added as these proceedings continue.

146.    Karen Rowland proposes to represent herself and the Virginia Class defined above.

147.    Karen Rowland qualifies as a person who is a member of the respective Class definition he seeks to represent.

148.    The members of the Virginia Class are capable of being described without difficult managerial or administrative problems. The members are readily identifiable from the information and records in the possession, custody or control of the Defendants, public records, and records of third parties including the consumer reporting agencies who report the Defendants furnished credit information to others as part of their business.

149.    Upon information and belief based on public records the Virginia Class is sufficiently numerous such that individual joinder of all members is impractical. This allegation is based on the fact that the NCSLT Trusts have collected against thousands of consumers nationwide, including hundreds of cases in Virginia by TSI where TSI managed and directed attorneys in their Attorney Network and was engaged in the unauthorized practice of law.

150.    There are questions of law and fact common to the Virginia Class and, in fact, the wrongs alleged against the NCSLT Trusts and the other defendants are identical. The common issues include, but are certainly not limited to:

      a.    Whether the Defendants failed to meet the minimum investigation and good faith requirements of CR 11 and were in furtherance of and consequent to unfair and deceptive practices of repeatedly filing lawsuits without adequate investigation and without adequate or reasonable investigation by counsel;

b.      Whether the Defendants engaged in any material investigation as to the completeness or authenticity of records to prove the chain of title and/or ownership of loan documents;

c.      Whether the Defendants engaged in any material investigation regarding statutes of limitations, as may be applicable to the alleged borrowers;

d.      Whether the Defendants engaged in any investigation of prior collection activities to determine if any unfair practice had been committed;

e.      Whether the Defendants engaged in any investigation of the validity or truth of statements contained in the alleged loan documents;

f.      Whether the Defendants both negligently and intentionally caused false or forged evidence to be submitted in student loan collection actions commenced in the state of Virginia;

g.      Whether the Defendants have used false, deceptive or misleading statements and documents in connection with its attempts to collect debts from Rowland;

h.      Whether the Defendants have made false statements concerning the character, amount or legal status of any debts;

i.      Whether the Defendants have made any threat to take legal action that they do not have the right to take;

j.      Whether the Defendants have used any unfair and deceptive means to collect or attempt to collect any debt;

k.      Where the Defendants sued the Plaintiff for a debt not owed to the Defendant Trusts;

l.      Whether the Defendants filed and served lawsuits without standing or ownership of the alleged debt;

m.     The Defendants' net worth;

n.     Whether the Defendant TSI has engaged in the unauthorized practice of law;

o.     Whether the Defendants are collecting debts in the name of the Trusts deceptive when the Trusts have no employees and act only through their affiliates and agents;

p.     Whether the Defendants' letters sent to Plaintiff prior to filing failed to identify the original creditor;

q.     Whether U.S. Bank is legally and contractually responsible for the actions of persons performing duties for the Special Servicer under the Default Prevention and Collection Services Agreement.

151.   Ms. Rowland's claims are the same as each member of the Class and are based on the same legal and factual theories.

152.   There is nothing unusual about the Plaintiff to warrant a material difference between her claims and the claims of the members of the class she seeks to represent.

153.   The Defendants' likely defenses (though unavailing) are and will be typical of and the same or identical for each of the Class and will be based on the same legal and factual theories. There are no valid, unique defenses or defenses that will become the major focus of the action.

154.   Ms. Rowland will fairly and adequately represent and protect the interests of the class members.

155.   Ms. Rowland does not have any interests antagonistic to the members of the class she seeks to represent.

156.   Ms. Rowland seeks certification pursuant to Rule 23(b)(2) and (b)(3).

157.    The Defendants have acted on grounds that applies uniformly across the Virginia Class. so that the underlying statutory relief afforded to the claims below is appropriate respecting each of the classes as a whole. Further, the common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy. A class action will cause an orderly and expeditious administration of class members' claims, and economies of time, effort, and expenses will be fostered, and uniformity of decisions will be ensured.

158.    There are no individual questions to establish the claims of the Plaintiff and the Virginia Class members. The claims are based on Defendants' omissions and failure to have either a permissible purpose to collect sums from the class members or attempt to collect sums from the class members.

159.    Ms. Rowland's claims are typical of the claims of the Virginia Class members.

160.    Plaintiff is an adequate representative of the putative class, because her interest coincides with, and are not antagonistic to, the interests of the members of the Class she seeks to represent; she has retained counsel competent and experienced in such litigation; and she has and intends to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the Class. Neither Plaintiff nor her counsel have any interests which might cause her not to vigorously pursue this action.

161.    The Virginia Class members have suffered damages, losses, and harm similar to those sustained by Rowland in relation to the improper, unfair, and deceptive collect activities of the Defendants in violation of state and federal laws governing their activities.

## V.     CAUSES OF ACTION

### General Allegations Applicable to All Counts

162.    With respect to the alleged debt, Plaintiff is a consumer as defined by 15 U.S.C. § 1692a(3)a and all Defendants are debt collectors as defined by 15 U.S.C. § 1692a(6).

163.    With respect to the alleged debt, Plaintiff is a "debtor" as defined by Va.Code § 59.1-198 and Defendants are collection agencies as defined by Va.Code § 59.1-198.

164.    For claims arising under the Fair Debt Collection Practices Act, such claims are assessed using the "least sophisticated debtor" standard. *Russell v. Absolute Collection Services*, 763 F.3d 385, 394 (4th Cir. 2014, *U.S. v. National Financial Services, Inc.*, 98 F.3d 131, 135 (4th Cir. 1996).

### COUNT ONE
### VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e
### Defendant MRS BPO, L.L.C.

165.    A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  15 U.S.C. § 1692e. A non-exclusive list of examples within the statute includes: The false representation of the character, amount, or legal status of a debt (§ 1692e(2)), the threat to take any action which cannot be legally taken (§  1692e(5)); the false representation of information to others (§ 1692e(8));or the use of any false representation or deceptive means to collect or attempt to collect a debt (§ 1692e(10)).

166.    Defendant MRS used false, deceptive, or misleading representations or means in connection with the collection of an alleged debt when it:

    a.      Sent a letter received after April 12, 2022 to collect on a debt that Plaintiff did not owe. *See* **Exhibit L**.

    b.      Sent a letter received after June 8, 2022 to collect on a debt that Plaintiff did not owe. *See* **Exhibit M**.

c.      Sent a letter dated July 11, 2022 to collect on a debt that Plaintiff did not owe. *See* **Exhibit N**.

d.      Sent a letter dated July 13, 2022 to collect on a debt that Plaintiff did not owe. *See* **Exhibit O**.

e.      Sent a letter August 5, 2022 to collect on a debt that Plaintiff did not owe. *See* **Exhibit P.**

f.      Sent a letter September 12, 2022 to collect on a debt that Plaintiff did not owe. *See* **Exhibit Q**.

g.      Sent a letter October 17, 2022 to collect on a debt that Plaintiff did not owe. *See* **Exhibit R**.

h.      Sent a letter February 13, 2023 to collect on a debt that Plaintiff did not owe. *See* **Exhibit S.**

i.      The letters represented that there was a principal amount owed to the Defendant Trusts in amounts that are more than the documentation supplied in the lawsuit against Ms. Rowland in 2016 and 2018 that claims any principal was limited to $20,000 for the BofA Loan and $20,000 for the Chase Loan, it ever allegedly was assigned to the Defendant Trusts.

j.      Represented that interest was accumulating on debts that were time barred and owed to the Defendant Trusts.

k.      Made false or deceptive statements to Ms. Rowland during collection calls to her.

167.    Therefore, Defendant MRS violated 15 U.S.C. § 1692e, and/or its subsections on numerous occasions.

**COUNT TWO**
**VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692f**
**Defendant MRS BPO, L.L.C.**

168.   A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

169.   Furthermore, it was unfair and unconscionable to call Ms. Rowland at work and at home and to provide different original balance amounts in for the alleged debt without informing her that they could not legally sue her for the alleged debt because it was beyond the statute of limitations.

170.   It was also unfair and unconscionable to call her at work and to communicate with her husband and co-workers when they had her phone number and knew where she lived.

171.   Defendant MRS therefore violated 15 U.S.C. § 1692f and/or § 1692f(1) on numerous occasions.

**COUNT THREE**
**VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e**
**Defendant Convergent Outsourcing, Inc.**

172.   Defendant Convergent used false, deceptive, or misleading representations or means in connection with the collection of an alleged debt when by use of the following in its collection efforts against Ms. Rowland:

      a.   The call to Rowland in September 2021 to collect on a debt she did not owe

      b.   The call to Rowland on September 24, 2021 to collect on a debt she did not owe;

      c.   The letter dated September 25, 2021, to collect on a debt she did not owe;

      d.   The September 27, 2021 call to Rowland to collect on a debt she did not owe;

      e.      The call to Rowland's husband cell phone to collect on a debt she did not owe;

      f.      Convergent's calls to her place of employment to collect on a debt she did not owe.

## COUNT FOUR
## VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692f
## Defendant Convergent Outsourcing, Inc.

173.    It was unfair and unconscionable of Convergent to call Ms. Rowland at work and at home and to provide different original balance amounts in for the alleged debt without informing her that they could not legally sue her for the alleged debt because it was beyond the statute of limitations.

174.    It was also unfair and unconscionable to call her at work and to communicate with her husband and co-workers when they had her phone number and knew where she lived.

175.    Defendant Convergent therefore violated 15 U.S.C. § 1692f and/or § 1692f(1) on numerous occasions.

## COUNT FIVE
## VICARIOUS LIABILITY
## Defendants TSI, U.S. Bank, National Collegiate Student Loan Trust 2006-4, and National Collegiate Student Loan Trust 2007-4

176.    Defendants TSI, U.S. Bank and the Trusts are vicariously liable for the acts of MRS and Convergent since they hired and directed their actions.

## COUNT SIX
## VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT
## Defendants TSI, National Collegiate Student Loan Trust 2006-4, and National Collegiate Student Loan Trust 2007-4

177.    The loan transactions with Rowland meet the definition of "consumer transactions" under Va. Code §59.1-198, since they involve the sale of goods or services to be used primarily for personal, family or household purposes.

178.   TSI and the Trusts meet the definition of a supplier under §59.1-198. The transaction is accordingly subject to the provisions of the Virginia Consumer Protection Act of 1977, VCA §59.1-196 et seq. ("VCPA").

179.   The Defendant TSI has engaged in the unauthorized practice of law.

180.   The Defendant Trusts are responsible for the actions of TSI.

181.   The Defendants' actions are prohibited by VCA §59.1-200(60).

182.   The unauthorized practice of law by TSI is not regulated by the Federal Consumer Credit Protection Act, 15 U.S.C. § 1601 et seq.

183.   The Defendants' actions were willful as they intended to proceed to engage in the practice of law by managing, controlling, and directing attorneys through the Attorney Network Agreement.

184.   Rowland and the Class are entitled to the relief provided by VCPA §59.1-204.

## VI.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Karen S. Rowland requests that the Court enter judgment on behalf of herself and the class she seeks to represent against Defendants for:

A.   Certification for this matter to proceed as a class action;

B.   Actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against Defendants Transworld Systems, Inc. MRS BPO, L.L.C., and CONVERGENT OUTSOURCING, INC.;

C.   Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(B) against Defendants Transworld Systems, Inc. MRS BPO, L.L.C., and CONVERGENT OUTSOURCING, INC.;

D.      One non-duplicative award of actual damages under the FDCPA against Defendants Transworld Systems, Inc. MRS BPO, L.L.C., and CONVERGENT OUTSOURCING, INC.;

E.      For statutory damages pursuant to Va. Code § 59.1-204(a) against Defendants TSI, National Collegiate Student Loan Trust 2006-4, and National Collegiate Student Loan Trust 2007-4;

F.      One non-duplicative award of up to three times the actual damages sustained under the VCPA against Defendants TSI, National Collegiate Student Loan Trust 2006-4, and National Collegiate Student Loan Trust 2007-4 for their willful violations of the VCPA;

G.      Attorney's fees, litigation expenses and costs of suit against Defendants Transworld Systems, Inc. MRS BPO, L.L.C., and CONVERGENT OUTSOURCING, INC. pursuant to 15 U.S.C. § 1692k(a)(3) and Va. Code § 59.1-204(b);

H.      Attorney's fees, litigation expenses and costs of suit against Defendants TSI, National Collegiate Student Loan Trust 2006-4, and National Collegiate Student Loan Trust 2007-4 pursuant to and Va. Code § 59.1-204(b);

I.      Judgment against Defendants TSI, U.S. Bank, National Collegiate Student Loan Trust 2006-4, and National Collegiate Student Loan Trust 2007-4 for their vicarious liability as prayed for herein; and

J.      Such other or further relief as the Court deems proper.


DATED this July 10, 2023

                        Respectfully submitted,
                        KAREN S. ROWLAND
                        By Counsel

_ */s/ Dale W. Pittman* _____
Dale W. Pittman, VSB #15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
804-861-6000
804-8613368 (Fax)
dale@pittmanlawoffice.com

Christina L. Henry
HENRY & DeGRAAFF, P.S.
113 Cherry St, PMB 58364
Seattle, WA 98104
206) 330-0595
(206) 400-7609 (Fax)
chenry@hdm-legal.com
*Admitted Pro Hac Vice*

Scott Borison
BORISON FIRM, LLC.
1400 S. Charles St.
Baltimore MD 21230
(301) 6201-1016
scott@borisonfirm.com
*Admitted Pro Hac Vice*