# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

KAREN S. ROWLAND,

       Plaintiff,

v.

TRANSWORLD SYSTEMS, INC.;

MRS BPO, L.L.C.;

CONVERGENT OUTSOURCING, INC.;

NATIONAL COLLEGIATE STUDENT
LOAN TRUST 2006-4;

NATIONAL COLLEGIATE STUDENT
LOAN TRUST 2007-4; and

U.S. BANK NATIONAL ASSOCIATION,

       Defendants.

Civil Action No. 3:23-cv-258
Hon. M. Hannah Lauck

---

## MEMORANDUM OF LAW IN SUPPORT OF TRANSWORLD SYSTEMS INC., CONVERGENT OUTSOURCING INC., AND MRS BPO, L.L.C.'S
## MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

William D. Bayliss, Esq.
Virginia Bar No. 13741
Joseph E. Blackburn, Esq.
Virginia Bar No. 81871
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
P.O. Box 1320 (23218)
Richmond, VA 23219
Telephone: (804) 420-6459
Facsimile: (804) 420-6507
bbayliss@williamsmullen.com
jblackburn@williamsmullen.com

Bryan C. Shartle, *Pro Hac Vice Pending*
Justin H. Homes, *Pro Hac Vice Pending*
Bradley J. St. Angelo, *Pro Hac Vice Pending*
SESSIONS, ISRAEL & SHARTLE, LLC
3838 North Causeway Blvd, Suite 2800
Metairie, LA 70002-7227
Telephone: (504) 828-3700
Facsimile: (504) 828-3737
bshartle@sessions.legal
jhomes@sessions.legal
bstangelo@sessions.legal

*Counsel for Transworld Systems Inc., Convergent Outsourcing, Inc., and MRS BPO, L.L.C.*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ 3

I. INTRODUCTION ......................................................................................................... 6

II. CONCISE STATEMENT OF FACTS ........................................................................ 7

III. LAW AND ARGUMENT .......................................................................................... 8

    A.    Motion To Dismiss Standard. ................................................................. 8

    B.    Almost All Of Plaintiff's Claims Are Time Barred. ............................... 9

        1.    Plaintiff's FDCPA Claims Premised On Alleged Conduct Prior To April 17, 2022 Are Time Barred. ............................................... 10

        2.    Plaintiff's VCPA Claim Is Time Barred. ................................... 11

    C.    Plaintiff's FDCPA Claims Based On The Trusts' Ownership Of Her Loans Fail Because She Lacks Prudential Standing To Challenge The Assignment Of Her Loans. ........................................................................ 11

    D.    MRS And TSI Were Not Required To Inform Plaintiff She Could Not Be Sued To Collect A Time Barred Debt. ................................................... 15

    E.    Plaintiff's Allegation That MRS Misrepresented The Principal Balance Of The Loans Should Be Rejected—And Her FDCPA Claims Against MRS On that Basis Dismissed—Because The Allegation Is Contradicted By The Complaint Exhibits. ..................................................................... 17

    F.    Plaintiff Does Not Plausibly Allege A Violation Of § 1692f Or § 1692f(1) Against MRS For Calling Her At Work Or Communicating With Her Husband. ............................................................................................. 19

    G.    Plaintiff's Claim For Vicarious Liability Must Be Dismissed. .............. 20

    H.    Plaintiff Fails To State A Claim Against TSI Under The VCPA. ........... 21

IV. CONCLUSION ............................................................................................................ 22

CERTIFICATE OF SERVICE .......................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206 (4th Cir. 2019).................................. 8

*Ali v. Coleman*, No. 1:12-CV-560, 2013 WL 4040444 (E.D. Va. Aug. 6, 2013)......................... 20

*Alston v. Midland Credit Mgmt., Inc.*, No. 8:18-CV-00014-AMQ, 2018 WL 3309725
(D.S.C. July 3, 2018) ................................................................................................................ 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................................... 8

*Babakaeva v. PTR Invs., Inc.*, No. 2:21CV267, 2022 WL 807381 (E.D. Va. Feb. 11,
2022) ......................................................................................................................................... 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 8, 9

*Bell v. Clarke*, No. CV TDC-15-1621, 2016 WL 1045959 (D. Md. Mar. 16, 2016) ................... 12

*Bender v. Elmore & Throop, P.C.*, 963 F.3d 403 (4th Cir. 2020) ................................................ 10

*Bennett v. Asset Recovery Solutions, LLC*, No. 14CV4433DRHSIL, 2017 WL 432892
(E.D. N.Y. Jan. 5, 2017), *report and recommendation adopted*, No. CV 14-
4433(DRH)(SIL), 2017 WL 421920 (E.D.N.Y. Jan. 31, 2017) .............................................. 20

*Bennett v. Bank of Am., N.A.*, No. 3:12CV34-HEH, 2012 WL 1354546 (E.D. Va. Apr. 18,
2012) ......................................................................................................................................... 12

*Bishop v. Bartlett*, 575 F.3d 419 (4th Cir. 2009) ........................................................................ 12

*Blankenship v. Manchin*, 471 F.3d 523 (4th Cir. 2006)........................................................... 9, 18

*Carner v. Clements*, No. 6:22-cv-00030, 2023 WL 2764762 (W.D. Va. Mar. 31, 2023)............ 13

*Ducrest v. Alco Collections, Inc.,* 931 F.Supp. 459 (M.D. La. 1996)........................................... 14

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435 (4th Cir. 2011).................... 9

*Elane v. Revenue Maximization Group,* 233 F.Supp.2d 496 (E.D. N.Y.2002) ............................ 14

*Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159 (4th Cir. 2016)................................................ 18

*Guth v. Hamlet Associates, Inc.,* 230 Va. 64 (1985)..................................................................... 16

*Hardnett v. M&T Bank*, 204 F. Supp. 3d 851 (E.D. Va. 2016), *aff'd sub nom., Hardnett v.
M & T Bank*, 699 F. App'x 242 (4th Cir. 2017) ................................................................ 12, 13

*Jenkins v. Heintz,* 124 F.3d 824 (7th Cir. 1997) .......................................................................... 14

*Jenkins v. RJM Acquisitions, LLC,* No. 5:10CV27-RLV, 2013 WL 589006 (W.D. N.C. Feb. 14, 2013) ......................................................................................................... 15

*Jenkins v. Union Corp.,* 999 F.Supp. 1120  (N.D. Ill. 1998) ........................................ 14

*Johnson v. EquityExperts.org, LLC*, No. 3:19-CV-243-JAG, 2020 WL 5569589 (E.D. Va. Sept. 17, 2020) ........................................................................................................ 10

*Lim v. Tisack*, No. 7:16-CV-00029, 2017 WL 1194516 (W.D. Va. Mar. 30, 2017) ............. 20, 21

*Mavilla v. Absolute Collection Serv., Inc.,* No. 5:10-CV-412-F, 2013 WL 140046 (E.D. N.C. Jan. 10, 2013) .................................................................................................... 15

*McKinley v. Everest Receivable Services, Inc.*, No. 19-CV-1289S, 2022 WL 446407 (W.D.N.Y. February 14, 2022) ..................................................................................... 20

*Messer v. Shannon & Luchs Co.*, 15 Va. Cir. 18 (1985) ............................................. 21

*Miller v. Trident Asset Management, LLC*, No. CV ADC-18-2538, 2019 WL 4467036 (D. Md. Sept. 18, 2019) ..................................................................................................... 16

*Nadendla v. WakeMed*, 24 F.4th 299 (4th Cir. 2022) .................................................. 8

*Owens v. DRS Auto. Fantomworks, Inc.*, 288 Va. 489, 764 S.E.2d 256 (2014) ............................. 21

*Powell v. Bank of Am.*, No. 118CV00824LMBIDD, 2018 WL 5270332 (E.D. Va. Oct. 23, 2018) ...................................................................................................................... 11

*Price v. M.R.S. Assocs., Inc.*, No. 7:13-CV-13-D, 2014 WL 2930723 (E.D. N.C. June 27, 2014) ...................................................................................................................... 15

*Proctor v. PMR Law Grp.*, No. 09-CV-1028S, 2010 WL 4174723 (W.D.N.Y. Oct. 25, 2010) ...................................................................................................................... 20

*Richardson v. Shapiro & Brown, LLP*, 751 F. App'x 346 (4th Cir. 2018), *aff'd*, No. 22-1272, 2022 WL 17103767 (4th Cir. Nov. 22, 2022) ...................................................... 10

*Rotkiske v. Klemm*, 140 S. Ct. 355, 205 L. Ed. 2d 291 (2019) ..................................... 10

*Sayyed v. Wolpoff & Abramson, LLP*, 733 F. Supp. 2d 635 (D. Md. 2010) ................................ 14

*Singletary v. Nationstar Mortg., LLC*, No. CV TDC-14-3204, 2016 WL 1089419 (D. Md. Mar. 21, 2016) ........................................................................................................ 20

*Smallwood v. Nationstar Mortg., LLC*, No. CV PX-16-4008, 2017 WL 6527251 (D. Md. Dec. 21, 2017) ........................................................................................................ 13

*Tucker v. Owen*, 94 F.2d 49 (4th Cir. 1938) ............................................................. 17

*Wallace v. Capital One Bank,* 168 F.Supp.2d 526 (D. Md. 2001) .......................................... 15, 16

*Warth v. Seldin*, 422 U.S. 490 (1975) ....................................................................................... 12

*Wolf v. Fed. Nat'l Mortg. Ass'n*, 830 F.Supp.2d 153 (W.D.Va.2011), *aff'd*, 512 Fed.Appx. 336 (4th Cir.2013) ............................................................................................ 12, 13

## Statutes

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 8

Fed. R. Civ. P. 8(a) ..................................................................................................................... 8

Va. Code Ann. § 54.1-3904 ....................................................................................................... 21

Va. Code Ann. § 59.1-204(A) ............................................................................................... 11, 21

Va. Code Ann. § 8.01-229(G) .................................................................................................... 16

## Treatises

5 C. Wright & A. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) .......................... 9

## Regulations

34 C.F.R. § 685.202(b)(1) .......................................................................................................... 18

Defendants, Transworld Systems Inc. ("TSI"), Convergent Outsourcing, Inc. ("COI"), and MRS BPO, LLC ("MRS"), submit this memorandum in support of their Motion to Dismiss (the "Motion") the Amended Class Action Complaint ("FAC") (Doc. 10) filed by Karen Rowland ("plaintiff").

## I. **INTRODUCTION**

Plaintiff's core allegation is the chain of title documents evidencing the purchase and assignment of her student loans are inadequate, and that, consequently, the defendants "do not have the right to collect any sums from [her]." Based upon this (false) assertion, plaintiff argues that any alleged attempts by TSI, COI, or MRS to collect her loans violates §§ 1692e and 1692f of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. She also alleges TSI's placement of her defaulted loans with a licensed Virginia attorney somehow constitutes the unauthorized practice of law under the Virginia Consumer Protection Act ("VCPA"), Va. Code Ann. § 19.1-196 *et seq*. Plaintiff is wrong, and her claims against TSI, COI, and MRS fail as a matter of law.

As an initial matter, nearly all of plaintiff's claims are time barred by the FDCPA and VCPA statues of limitations. Most of the conduct she alleges—including all of the alleged conduct by TSI and COI—occurred years ago. Indeed, the only conduct alleged in the complaint that is *not* time barred relates to MRS.

Further, because plaintiff admits owing the loans and merely contests owing them *to the defendant Trusts*, she lacks standing to assert her primary allegation that the purportedly defective assignment documentation renders all collection on her loans improper.

Finally, plaintiff's complaint fails to state a claim. Plaintiff cannot assert a standalone claim for "Vicarious Liability," as a matter of law. And, the VCPA does not even provide a cause of

action for the purported "unauthorized practice of law." For all these reasons, and as discussed below, the Court should dismiss plaintiff's FAC.

## II. <u>CONCISE STATEMENT OF FACTS</u>

Plaintiff alleges, in 2006 and 2007, she cosigned for and obtained two student loans (the "Loans") from Bank of America and JP Morgan Chase Bank, N.A., respectively. *See* FAC, ¶¶ 93, 95.

The Loans were allegedly assigned to National Collegiate Student Loan Trust 2006-4 ("NCSLT 2006-4") and National Collegiate Student Loan Trust 2007-4 ("NCSLT 2007-4") (collectively, the "Trusts"), respectively. *See id.*, ¶ 44.

Plaintiff alleges she has not made payments on NCSLT 2006-4's Loan since 2014, and she has never made payments on NCSLT 2007-4's Loan. *See id.*, ¶¶ 96, 97.

On December 6, 2016, NCSLT 2007-4, through its attorneys Scott & Associates, P.C. (the "Scott Law Firm"), filed a collection action against plaintiff in the Circuit Court for the City of Petersburg, Virginia, Case No. CL16-829. On December 8, 2016, NCSLT 2006-4, again through the Scott Law Firm, filed a similar action against plaintiff in the Petersburg General District Court for the City of Petersburg, Virginia, Case No. GV16006509-00. *See id.*, ¶¶ 100, 102. Both lawsuits (the "Lawsuits") were ultimately dismissed without prejudice. *See id.*, ¶¶ 101, 104.

Plaintiff alleges TSI thereafter hired COI to collect her unpaid Loans. *See id.*, ¶¶ 12, 92, 176. And, beginning September 21, 2021, through and ending in November 2021, plaintiff alleges she received telephone calls from COI, including calls to her at work, and that COI placed one call in "early November 2021" to her husband's cell phone, seeking to collect NCSLT 2006-4's Loan; she also alleges receiving one letter from COI dated September 25, 2021. *See id.*, ¶¶ 105–113.

On March 10, 2022, plaintiff alleges she received a collection letter from TSI regarding NCSLT 2007-4's Loan. *See id.*, ¶ 117.

Plaintiff alleges TSI also hired MRS to collect her unpaid Loans. *See id.*, ¶¶ 12, 92, 176. Plaintiff alleges she received a letter "[s]ometime after April 15, 2022," and another in June 2022, concerning the NCSLT 2006-4 Loan (*see id.*, ¶¶ 120, 130) and that she received more MRS letters throughout the fall of 2022 and in February 2023 in connection with both Loans (*see id.*, ¶ 133). She also alleges receiving an unspecified number of telephone calls from MRS in April and May 2022 (*see id.*, ¶ 127) and between June 17, 2022 and October 17, 2022 (*i.e.*, four months), she received 6 additional telephone calls and voice messages from MRS (*see id.*, ¶ 132).

On April 17, 2023, plaintiff filed her original complaint in the present action; on July 10, 2023, before any defendant answered or made any appearance, plaintiff filed the FAC that is the subject of this Motion. *See* Docs. 1, 10.

### III. LAW AND ARGUMENT

#### A.   Motion To Dismiss Standard.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "A motion to dismiss pursuant to [Fed. R. Civ. P.] 12(b)(6) tests the sufficiency of the claims pled in a complaint." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019).

To meet the Rule 8 standard and "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

In considering a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint." and must "draw all reasonable inferences [from

8

those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)  (citations and internal quotation marks omitted). "In considering a Fed. R. Civ. P. 12(b)(6) motion, a court may consider the complaint itself and any documents that are attached to it...." *Olson  v. Midland Funding, LLC*, 578 Fed.Appx. 248, 250 (4th Cir. 2014) (internal citations omitted); *see also Phillips v. LCI International, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (In addition to the factual allegations of the Complaint, the Court may also consider as part of the review of a 12(b) motion any documents that are "integral to and explicitly relied on in the complaint").

But the factual allegations must be more than "labels and conclusions [and] must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555; *see also id.* ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, 235–36 (3d ed. 2004)).

Finally, the Court "need not accept allegations that "contradict matters properly subject to judicial notice or [by] exhibit." *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006).

## B.    Almost All Of Plaintiff's Claims Are Time Barred.

Plaintiff asserts five substantive causes of action: four FDCPA claims and one VCPA claim.[1] While her sprawling FAC reaches back nearly two decades to the formation of the structured loan programs under which her Loans were issued, plaintiff's claims are subject to one- and two-year statutes of limitations, respectively. As explained below, the vast majority of the conduct alleged in the FAC is barred by the applicable statutes of limitations and, therefore, these claims should be dismissed.

---

[1] Plaintiff's "Count Five" for "Vicarious Liability" is not an independent cause of action and should be dismissed on that basis. *See infra* at Section III(G).

1.     **Plaintiff's FDCPA Claims Premised On Alleged Conduct Prior To April 17, 2022 Are Time Barred.**

An action under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). "That language unambiguously sets the date of the violation as the event that starts the one-year limitations period." *Rotkiske v. Klemm*, 140 S. Ct. 355, 360, 205 L. Ed. 2d 291 (2019); *see also Bender v. Elmore & Throop, P.C.*, 963 F.3d 403, 407 (4th Cir. 2020) (citing *Klemm*, 140 S. Ct. at 360). "The statute of limitations begins to run when the communication that violates the FDCPA is sent." *Babakaeva v. PTR Invs., Inc.*, No. 2:21CV267, 2022 WL 807381, *6 (E.D. Va. Feb. 11, 2022) (quoting *Richardson v. Shapiro & Brown, LLP*, 751 F. App'x 346, 349 (4th Cir. 2018)), *aff'd*, No. 22-1272, 2022 WL 17103767 (4th Cir. Nov. 22, 2022); *see also Johnson v. EquityExperts.org, LLC*, No. 3:19-CV-243-JAG, 2020 WL 5569589, *2 (E.D. Va. Sept. 17, 2020) ("The statute of limitations in § 1692k(d) begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered.") (quoting *Klemm*, 140 S. Ct. at 357).

Plaintiff filed this lawsuit on April 17, 2023. *See* Complaint (Doc. 1). Therefore, all FDCPA claims based on events occurring prior to April 17, 2022 are barred by § 1692k(d). Specifically, plaintiff's claims arising from the following conduct are beyond the one-year statute of limitations and must be dismissed: 1) all of the alleged conduct by COI, including calls and letters sent between September and November 2021 (*see* FAC at ¶¶ 105–114, 172–175); 2) the sole letter plaintiff alleges she received from TSI in March 2022 (*see id.* at ¶¶ 117–118); and 3) the April 12, 2022 MRS letter (*see id.* at Exh. L) and any other alleged conduct by MRS prior to April 17, 2022. These include the entirety of plaintiff's Counts Three and Four, as well as some of the allegations relating to Counts One and Two. To be clear, the *only* alleged conduct not barred by

the FDCPA's one-year statute of limitations are MRS's calls and letters sent to plaintiff between April 19, 2022, and February 13, 2023.

### 2.      Plaintiff's VCPA Claim Is Time Barred.

"[T]he VCPA has a two-year limitations period." *Powell v. Bank of Am.*, No. 118CV00824LMBIDD, 2018 WL 5270332, *4 (E.D. Va. Oct. 23, 2018) (citing Va. Code Ann. § 59.1-204.1(A)). Plaintiff alleges TSI violated § 59.1-200(60) of the VCPA through its purported "unauthorized practice of law." *See* FAC at ¶¶ 179, 181. Specifically, plaintiff alleges TSI's placement of her defaulted loans with the Scott Law Firm on behalf of the Trusts constitutes the practice of law, which is unauthorized because TSI is not an attorney. *See id.* at ¶¶ 85, 99–100, 102–103, 183 (TSI allegedly "engage[d] in the practice of law by managing controlling, and directing attorneys through the Attorney Network Agreement"); *see also* Exhs. G and I to the FAC. Setting aside that this claim fails on the merits (*see infra* at Section III(H)), it is barred by the VCPA's two-year statute of limitations. Va. Code Ann. § 59.1-204.1(A). The Lawsuits the Scott Law Firm filed against plaintiff were filed in 2017 and non-suited in 2018—nearly *5 years* before plaintiff filed her Complaint. Any claim arising from conduct prior to April 17, 2021—including any alleged conduct relating to the Lawsuits or TSI's placement of plaintiff's Loans with the Scott Law Firm —is time barred. The Court should dismiss Count Six of the FAC.

### C.      Plaintiff's FDCPA Claims Based On The Trusts' Ownership Of Her Loans Fail Because She Lacks Prudential Standing To Challenge The Assignment Of Her Loans.

Plaintiff admits she applied for and obtained the Loans. *See* FAC, ¶¶ 93, 95. Nevertheless, she contends MRS and COI's collection efforts on behalf of the Trusts were improper principally because the Trusts' acquisition and ownership of the Loans is not proven by the chain of title. "Defendants' collection or enforcement of the [Loans] . . . was unauthorized and unlawful because Defendant NCSLT Trusts does not have the legal right to enforce any student loan against Ms.

Rowland since it was unable to show that it was assigned the loan. [sic]" FAC, ¶ 143; s*ee also id.*, ¶ 25 ("TSI, through [MRS and COI], engaged in the collection of debts through false communications, collection calls and delinquent credit reporting where it asserted that the debts were collectible even though they lacked basis to collect because it could not be proven the Trusts had legal ownership of the private student loans.").

Plaintiff thus attacks the validity of the Trusts' assignments and, on that basis, the correctness of MRS and COI's representations in collection efforts on the Trusts' behalf that the Trusts owned the loans and, conversely, that plaintiff owed those debts *to the Trusts*.

But plaintiff lacks the prudential standing[2] to challenge the validity of the Trusts' chain of title documentation, at least in the context of her claim against MRS and COI, because she is "neither [a] part[y] to the assignment nor the intended beneficiar[y] of the assignment." *Hardnett v. M&T Bank*, 204 F. Supp. 3d 851, 858 (E.D. Va. 2016) (citing *Bennett v. Bank of Am., N.A.*, No. 3:12CV34-HEH, 2012 WL 1354546, *7 (E.D. Va. Apr. 18, 2012) (noting that "the validity of the assignment does not affect *whether* [a] [b]orrower owes its obligations, but only *to whom* [a] [b]orrower is obligated") (alterations in original) (citation omitted) and *Wolf v. Fed. Nat'l Mortg. Ass'n*, 830 F.Supp.2d 153, 161 (W.D.Va.2011), *aff'd*, 512 Fed.Appx. 336 (4th Cir.2013)), *aff'd sub nom., Hardnett v. M & T Bank*, 699 F. App'x 242 (4th Cir. 2017).

In *Hardnett*, the plaintiffs sued a bank and its law firm asserting claims for, *inter alia*, wrongful foreclosure and FDCPA violations based on an allegedly improper assignment of a deed

---

[2] "The standing doctrine has both constitutional and prudential components." *Bell v. Clarke*, No. CV TDC-15-1621, 2016 WL 1045959, *2 (D. Md. Mar. 16, 2016) (quoting *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009)). "Constitutional standing relates to whether there is an actual case or controversy under Article III of the Constitution; prudential standing consists of 'several judicially self-imposed limits on the exercise of federal jurisdiction.'" *Id*. (quoting *Allen v. Wright*, 468 U.S. 737, 750–51 (1984)). "One requirement of prudential standing is that 'the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Id*. at 423 (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

of trust securing their mortgage loan and the securitization of that loan. *See Hardnett*, 204 F. Supp. 3d. at 857. This Court dismissed the plaintiffs' complaint and noted the Hardnetts "lack[ed] standing to challenge the assignment of the Deet of Trust or the securitization of the loan." *Id*. at 858. Notably, plaintiff here argues the process by which her loan was assigned as securitized is "[t]he same model of securitization in the mortgage industry[.]" FAC, ¶ 38. Courts in Virginia and the 4th Circuit have repeatedly held browsers do not have standing to challenge collection efforts on their loans based on the assignment or securitization of those loans. *See id.*; *see also*, *e.g.*, *Carner v. Clements*, No. 6:22-cv-00030, 2023 WL 2764762, \*7 (W.D. Va. Mar. 31, 2023) ("a borrower … 'lacks standing to attack the validity of the assignment.'") (quoting *Wolf*, 512 F. App'x at 342 (explaining that "the assignment does not affect [borrower's] rights or duties at all," as she "still has the obligation under the note to make payments," and "the only thing the assignment affects is to whom [the borrower] makes the payments," meaning "she has no standing to challenge it.")).

Plaintiff's lack of prudential standing is fatal to her claims against MRS and COI premised on alleged misrepresentations that the Trusts owned the Loans and, conversely, that plaintiff owed the Loans to the Trusts. *Smallwood v. Nationstar Mortg., LLC*, No. CV PX-16-4008, 2017 WL 6527251, \*5 (D. Md. Dec. 21, 2017) is also instructive on this point. In that case, the plaintiff similarly averred that an assignment of her debt "was 'flawed, defective, and fraudulent,' and thus subsequent communications and attempts to collect the debt constitute 'Act(s) of Racketeering' under Civil RICO and violate the [FDCPA]." The court granted the defendant's Rule 12(b)(6) motion to dismiss the consumer claims, observing that "even taking plaintiff's allegations of [the alleged misrepresentations] as true, 'only a party to a contract' or a 'third-party beneficiar[y]' can 'bring suit to enforce the terms of a contract[.]'" *Id*. at \*4 (citation omitted).

This Court should reach the same results as *Hardnett* and *Smallwood* and dismiss plaintiff's FDCPA claims premised on the Trusts' ownership of her Loans. Simply put, plaintiff lacks prudential standing to challenge *what has not been challenged* by the parties to the respective agreements.

Not only does plaintiff lack prudential standing to challenge the assignments, but, contrary to her contentions, neither MRS nor COI was obligated by the FDCPA to conduct a "material investigation" of the Trusts' loan ownership or the sufficiency of the chain of title documentation prior to collection attempts, as she alleges. *See* FAC, ¶¶ 150(b) and (c). The FDCPA does not require a debt collector to engage in an independent investigation of the debt referred for collection. *Sayyed v. Wolpoff & Abramson, LLP*, 733 F. Supp. 2d 635, 646–47 (D. Md. 2010) (citing *Jenkins v. Heintz,* 124 F.3d 824, 834 (7th Cir.1997) (holding that a debt collector has no obligation to conduct an independent debt validity investigation); *Elane v. Revenue Maximization Group,* 233 F.Supp.2d 496, 500 (E.D. N.Y.2002) (noting that defendant was entitled to rely on its client's representation that the debt was valid)); *see also Jenkins v. Union Corp.,* 999 F.Supp. 1120, 1140–41 (N.D. Ill. 1998); *Ducrest v. Alco Collections, Inc.,* 931 F.Supp. 459, 462 (M.D. La. 1996). Rather, if plaintiff believed she did not owe the Loans *to the Trusts* (and she does not allege owing them to anyone else or that anyone else has ever attempted to collect them from her), it was incumbent upon her to have timely disputed the debts and requested validation following receipt of initial collection letters and statutory notices of her FDCPA dispute rights, as provided by § 1692g ("Validation of debts"), but *she does not allege she ever disputed her debts to any defendant.*

For all of the above reasons, plaintiff's Counts One through Four based on COI and MRS's ability to prove the Trusts' assignment to the Loans or their purported failure to investigate the sufficiency of the Trusts' proof prior to collection attempts should be dismissed.

**D.    MRS And TSI Were Not Required To Inform Plaintiff She Could Not Be Sued To Collect A Time Barred Debt.**

Plaintiff also contends MRS violated subparts of §§ 1692e and 1692f of the FDCPA by not informing her she could not be sued on her student loan debts because the debts were purportedly beyond the statute of limitations. *See* FAC, ¶¶ 136, 166(j), 169; *see also id.*, ¶ 137 (including TSI). But even assuming for purposes of this Motion that plaintiff's student loan debts were time-barred when MRS or TSI communicated with plaintiff, as alleged, no district court in this circuit has ever held any debt collector liable under those sections of the FDCPA by failing to give a time-barred debt disclosure absent a threat of litigation.

> Indeed, the FDCPA does not prohibit a collection agency from requesting payment on a time-barred debt, even if the collection agency does not disclose that the debt is time-barred and that any partial payment or acknowledgment would result in the debt's revival, as long as in doing so, the collection agency does not threaten or commence litigation.

*Price v. M.R.S. Assocs., Inc.*, No. 7:13-CV-13-D, 2014 WL 2930723, *3 (E.D. N.C. June 27, 2014) citing *Jenkins v. RJM Acquisitions, LLC,* No. 5:10CV27-RLV, 2013 WL 589006, *3 (W.D. N.C. Feb. 14, 2013) (unpublished); *Mavilla v. Absolute Collection Serv., Inc.,* No. 5:10-CV-412-F, 2013 WL 140046, *12 (E.D. N.C. Jan. 10, 2013) (unpublished); *Wallace v. Capital One Bank,* 168 F.Supp.2d 526, 528 (D. Md. 2001) (collecting cases); and other out-of-circuit cases.

Here, the MRS communications at issue (Amended Complaint Exhs. L–S) do not contain any threat of litigation, and plaintiff has not alleged otherwise.

Some courts in this circuit have acknowledged cases in the Fifth, Sixth, and Seventh Circuits, which require debt collectors to warn debtors that their partial payments may restart the

statute of limitations on the whole debt when the debt collector's communication indicates an implied threat of litigation. But those case are inapposite.

For example, in *Alston v. Midland Credit Mgmt., Inc.*, No. 8:18-CV-00014-AMQ, 2018 WL 3309725 (D.S.C. July 3, 2018), the debt collector's dunning letters offering to "settle" the debt included a disclosure that the debt was time-barred, but did not include a warning that any payment of the debt could revive the statute of limitations under applicable South Carolina law. The court ruled the letter violated the FDCPA because it failed to disclose a partial payment would revive the statute of limitations.

But those concerns are not present here. Under applicable Virginia law, a partial payment does not revive the statute of limitations. *See Guth v. Hamlet Associates, Inc.,* 230 Va. 64, 77, 334 S.E.2d 558 (1985) ("We consistently have held that, standing alone, part payment of the principal or payment of interest does *not* toll or remove the bar of the statute of limitations.") (emphasis added); *see also* Va. Code Ann. § 8.01-229(G).

Further, MRS's dunning letters (FAC Exhs. L, O) do not threaten litigation. "Contrary to the decisions in other circuits, this Court has stated that 'contact between a debt collector and a debtor about a time-barred bad debt is not necessarily an affirmative representation that the debt collector can sue on the debt.'" *Miller v. Trident Asset Management, LLC*, No. CV ADC-18-2538, 2019 WL 4467036, *7 (D. Md. Sept. 18, 2019) (quoting *Wallace*, 168 F.Supp.2d at 528). Nor do any of the MRS resolution offer letters (FAC Exhs. M, N, P–S) solicit a promise to repay the original amount of the debts. To the contrary, they offer a resolution for a fraction of the original outstanding amounts, the payments of which, by the very terms of the offers themselves and Virginia law, could not have revived the obligations. Moreover, no alleged telephone conversation

with MRS could support an FDCPA claim because "an oral promise to pay a debt is ineffective to remove bar of statute." *Tucker v. Owen*, 94 F.2d 49 (4th Cir. 1938).

Accordingly, plaintiff's Counts One and Two based on the alleged failure to inform plaintiff that she could not legally be sued on the subject student loan debts should be dismissed.

**E.      Plaintiff's Allegation That MRS Misrepresented The Principal Balance Of The Loans Should Be Rejected—And Her FDCPA Claims Against MRS On that Basis Dismissed—Because The Allegation Is Contradicted By The Complaint Exhibits.**

Plaintiff also claims MRS violated §§ 1692e and 1692f of the FDCPA by "providing different original balance amounts [] for the alleged debt". *See* FAC ¶ 169. Specifically, she alleges MRS's letters "represented that there was a principal amount owed to the Defendant Trusts in amounts that are more than the documentation supplied in the lawsuit[s] against Ms. Rowland in 2016 and 2018 that claim any principal was limited to $20,000 for the BofA Loan and $20,000 for the Chase Loan[.]" *Id*. at ¶ 166(i).

The entire premise of these claims—that the principal balance was limited to the borrowed amounts and permanently fixed at that amount by the loan documents—is *directly contradicted* by the exhibits attached to the FAC. For instance, the loan terms and conditions included with the Warrant in Debt concerning NCSLT 2006-4's loan and attached as Exhibit I to the FAC, contemplates that interest would accrue on the unpaid debt and that such accrued interest could and would be capitalized over time. It provides in part:

> Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid In full.

Section D.1 of the Credit Agreement Loan Terms and Conditions included with Exh. I, Doc. 10-9,

at p. 15 (PageID# 928). This accrued interest may be capitalized.[3]

> Capitalization – If I have elected the "Full Deferral" repayment
> option (the applicable repayment option is stated on the first page of
> this Credit Agreement),[4] I am not obligated to make any payments
> *until the loan enters the Repayment Period and you will add unpaid*
> *accrued Interest to the principal loan balance* as of the last day of
> each calendar quarter … during the Deferment Period and as of the
> last day of my Deferment Period. Interest that is added to principal
> is called "Capitalized Interest." . . . . I also understand that *you will*
> *also add all accrued and unpaid interest to the principal balance of*
> *my loan at the end of any forbearance period*[.]

Section D.3 of the Credit Agreement Loan Terms and Conditions included with Exh. I, Doc. 10-9,

at pp. 15–16 (PageID## 928–929) (emphasis added). And further:

> *Upon default, you may also capitalize any interest and fees* (i.e., add
> accrued and unpaid Interest and fees to the principal balance)[.]

Section I of the Credit Agreement Loan Terms and Conditions included with Exh. I, Doc. 10-9, at

p. 16 (PageID# 929) (emphasis added).

Because plaintiff's allegation that the principal amounts of the Loans were forever fixed at

the initial loan amounts is directly contradicted by her exhibits to the FAC, the Court need not

accept those allegations as true in considering this Motion. *Blankenship*, 471 F.3d at 529.

Moreover, "in the event of conflict between the bare allegations of the complaint and any exhibit

attached ..., the exhibit prevails." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir.

2016). Absent any plausible allegation that the principal amounts of the Loans remained static over

---

[3] "Capitalization" refers to the process of increasing the principal balance of a loan by adding unpaid
accrued interest to the borrower's unpaid principal balance. *See, e.g.*, 34 C.F.R. § 685.202(b)(1) defining
"capitalization" in the context of federal Direct Loans.
[4] In fact, the first page of the Credit Agreement reflects a "Full Deferral" Repayment Option. *See* Doc. 10-9,
page 14 of 38 (PageID#927).

their lifetimes, there is no factual basis on which to claim or even infer that MRS misrepresented the principal balances. Plaintiff's Counts One and Two on this basis should be dismissed.

**F.    Plaintiff Does Not Plausibly Allege A Violation Of § 1692f Or § 1692f(1) Against MRS For Calling Her At Work Or Communicating With Her Husband.**

Plaintiff claims it was "unfair and unconscionable to call her at work and to communicate with her husband and co-workers when [MRS] had her phone number and knew where she lived. *See* FAC, § 170. On this basis, plaintiff alleges MRS violated §§ 1692f and/or f(1) of the FDCPA.

The FAC is clear that only COI (not MRS) allegedly called plaintiff's husband, and, regardless, that any calls occurred no later than early November 2021. *See* FAC, ¶¶ 105, 106, 110, 111. Any FDCPA claims asserted on that basis are time-barred. *See* Section III(B), *supra*.

With respect to MRS's alleged workplace calls (*see* FAC ¶¶ 122–125), plaintiff does not allege anything "unfair" or "unconscionable" about them. Indeed, attempts to reach debtors at their workplaces are generally not improper. Only when the calls lead to the disclosure of information about debts do they run afoul of the FDCPA (*see* § 1692c(b)), or when the debtor receives too many calls or the calls occurred persistently or with harassing frequency (*see* § 1692d(5)); or when the debt collector has some reason to know that the calls to debtors' workplaces are inconvenient for debtors or the collector has some reason to know debtors' employers do not permit work place calls and calls continue regardless (*see* §§ 1692c(a)(1) and (3)).

Here, other than the allegation that some unspecified number of calls to plaintiff at her workplace *occurred*, plaintiff does not articulate *how* the calls violate the FDCPA, much less how they were "unfair and unconscionable." Mere telephone calls, standing alone, "are not akin to the unfair practices listed among the examples [of unfair and unconscionable conduct] in § 1692f."[5]

---

[5] In fact, plaintiff's § 1692f(1) claim is completely baseless. That provision has nothing to do with telephone communications. It prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense

*McKinley v. Everest Receivable Services, Inc.*, No. 19-CV-1289S, 2022 WL 446407 (W.D.N.Y. February 14, 2022). As in *McKinley*, plaintiff here does not allege any unconscionable conduct aside from the calls themselves, which other courts have likewise found insufficient to state a claim under § 1692f. *Id.* (citing *Proctor v. PMR Law Grp.*, No. 09-CV-1028S, 2010 WL 4174723, *3 (W.D. N.Y. Oct. 25, 2010) (denying a § 1692f claim where "no additional conduct is alleged to support [such a] claim")); *see also Bennett v. Asset Recovery Solutions, LLC*, No. 14CV4433DRHSIL, 2017 WL 432892, *5 (E.D. N.Y. Jan. 5, 2017), *report and recommendation adopted,* No. CV 14-4433(DRH)(SIL), 2017 WL 421920 (E.D.N.Y. Jan. 31, 2017)  (concluding that calls to plaintiff's employer, alleged as violations of §§ 1692c(a)(3) and 1692d(5), fail to state unfair practice under § 1692f). Absent some allegation about the number and frequency of the calls, the content of the calls, whether plaintiff ever informed MRS that workplace calls were inconvenient, or whether MRS knew her employer permitted such communications, plaintiff fails to state a claim for any FDCPA violation simply because MRS tried to contact her at her workplace. *See, e.g.*, *Singletary v. Nationstar Mortg., LLC*, No. CV TDC-14-3204, 2016 WL 1089419, *4 (D. Md. Mar. 21, 2016). Plaintiff's Count Two for violation of §§ 1692f and/or f(1) should be dismissed.

## G.     Plaintiff's Claim For Vicarious Liability Must Be Dismissed.

Plaintiff purports to assert a cause of action against TSI for "Vicarious Liability" in Count Five of the FAC. But "vicarious liability is not a separate cause of action in Virginia, but rather, a theory of liability."  *Ali v. Coleman*, No. 1:12-CV-560, 2013 WL 4040444, *2 (E.D. Va. Aug. 6, 2013); *see also Lim v. Tisack*, No. 7:16-CV-00029, 2017 WL 1194516, *7 (W.D. Va. Mar. 30, 2017). And to the extent plaintiff alleges TSI is vicariously liable for the actions of COI or MRS,

---

incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

that remedy is not available where the "underlying claims fail for the reasons stated herein." *Lim*, 2017 WL 1194516 at \*7. Accordingly, the Court should dismiss plaintiff's Count Five.

**H.     Plaintiff Fails To State A Claim Against TSI Under The VCPA.**

Plaintiff's claim for "Unauthorized Practice of Law," in alleged violation of the VCPA, must also be dismissed.

While plaintiff alleges TSI's "actions are prohibited by VCA §59.1-200(60), that section of the VCPA involves the violation of "any provision of § 54.1-111 relating to the unlicensed practice of a profession licensed under Chapter 11 (§ 54.1-1100 et seq.) or Chapter 21 (§ 54.1-2100 et seq.) of Title 54.1[.]" Va. Code Ann. § 59.1-200(60). The referenced Chapters 11 and 21 relate to "Contractors" and "Real Estate Brokers, Salespersons and Rental Location Agents," respectively. In other words, they have nothing to do with the practice of law or its regulation. For this reason alone, plaintiff's Count Six should be dismissed.

Moreover, there is no private cause of action for "unauthorized practice of law" under Virginia law. *See*, *e.g.*, *Messer v. Shannon & Luchs Co.*, 15 Va. Cir. 18, 19 (1985) (noting that unauthorized practice of law is a misdemeanor, but the court was "aware of no authority which would permit this Court to recognize such an action for allowing individual recovery of damages."); *see also* Va. Code Ann. § 54.1-3904 (confirming a collection agency's referral of debts to attorneys does not constitute the unauthorized practice of law).

Finally, plaintiff does not allege she relied upon or suffered any damages resulting from any allegedly fraudulent conduct by TSI, as required to state a claim under the VCPA. *See Owens v. DRS Auto. Fantomworks, Inc.*, 288 Va. 489, 498, 764 S.E.2d 256, 260 (2014) ("The VCPA, however, still requires proof, in misrepresentation cases, of the elements of reliance and damages.") (citing Va. Code Ann. § 59.1-204(A)).

Plaintiff fails to state a claim under the VCPA, and Count Six of the FAC must be dismissed.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant this Motion and enter an order (1) dismissing all FDCPA claims asserted under Counts One through Four, except those premised on communications occurring within one-year prior to the commencement of this lawsuit as time barred; (2) dismissing Count Five; (3) dismissing all timely FDCPA claims arising from the collection or attempted collection of debts without evidence necessary to prove the Trusts' loan ownership for lack of standing; and, alternatively, (4) dismissing all timely FDCPA claims arising from the alleged failure to inform plaintiff she could not be legally sued on the student loan debts underlying this dispute; (5) dismissing all timely FDCPA claims arising from an alleged misrepresentation as to the principal amount of the student loan debts; and (6) dismissing plaintiff's VCPA claim under Count Six.

Dated:  September 8, 2023                    Respectfully submitted,

*/s/ William D. Bayliss*
William D. Bayliss, Esq.
Virginia Bar No. 13741
Joseph E. Blackburn, Esq.
Virginia Bar No. 81871
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
P.O. Box 1320 (23218)
Richmond, VA 23219
Telephone: (804) 420-6459
Facsimile: (804) 420-6507
bbayliss@williamsmullen.com
jblackburn@williamsmullen.com

Bryan C. Shartle, *Pro Hac Vice Pending*
Justin H. Homes, *Pro Hac Vice Pending*
Bradley J. St. Angelo, *Pro Hac Vice Pending*
SESSIONS, ISRAEL & SHARTLE, LLC

3838 North Causeway Blvd, Suite 2800
Metairie, LA 70002-7227
Telephone: (504) 828-3700
Facsimile: (504) 828-3737
bshartle@sessions.legal
jhomes@sessions.legal
bstangelo@sessions.legal

*Counsel for Transworld Systems Inc., Convergent Outsourcing, Inc., and MRS BPO, L.L.C.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 8th day of September, 2023, a copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system.

*/s/ William D. Bayliss*
William D. Bayliss, Esq.
Virginia Bar No. 13741
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
P.O. Box 1320 (23218)
Richmond, VA 23219
Telephone: (804) 420-6459
Facsimile: (804) 420-6507
bbayliss@williamsmullen.com

.