IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KAREN S. ROWLAND,

      Plaintiff,

    v.                                                    Civil Action No. 3:23cv258

TRANSWORLD SYSTEMS, INC., *et al.*,

      Defendants.

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on three motions: (1) Defendants National Collegiate

Student Loan Trust 2006-4 (the "2006-4 Trust") and National Collegiate Student Loan Trust

2007-4's (the "2007-4 Trust") (collectively, the "Trusts") Motion to Dismiss (the "Trusts'

Motion to Dismiss"), (ECF No. 24); (2) Defendant U.S. Bank National Association's ("U.S.

Bank") Motion to Dismiss Plaintiff's Amended Complaint ("U.S. Bank's Motion to Dismiss"),

(ECF No. 26); and (3) Defendants Transworld Systems Inc. ("Transworld"), Convergent

Outsourcing, Inc.[1] ("Convergent"), and MRS BPO, LLC's ("MRS") ("Transworld, Convergent,

and MRS's Motion to Dismiss"), (ECF No. 28), (collectively, the "Motions to Dismiss").[2]

Plaintiff Karen S. Rowland responded in opposition to each Motion. (ECF Nos. 42, 43, 44.) All

---

[1] On October 13, 2023, after Transworld, Convergent, and MRS filed their Motion to Dismiss (ECF No. 28), Ms. Rowland voluntarily dismissed Convergent from this action with prejudice. (ECF Nos. 41, 48.) Ms. Rowland brought Counts III and VI solely against Convergent. (ECF No. 10, at 34–35.) Thus, Convergent's dismissal resulted in the dismissal of Counts III and IV of the Amended Complaint. Unless otherwise specified, the Court's references to "Defendants" throughout this memorandum opinion shall only refer to the five remaining Defendants: the Trusts, U.S. Bank, Transworld, and MRS.

[2] The Court employs the pagination assigned by the CM/ECF docketing system.

remaining Defendants—the Trusts, U.S. Bank, Transworld, and MRS—replied.  (ECF Nos. 45, 46, 47.)

The matter is ripe for disposition.  The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process.

For the reasons articulated below, the Court will grant the Trusts' Motion to Dismiss, (ECF No. 24), and U.S. Bank's Motion to Dismiss, (ECF No. 26).  The Court will grant in part and deny in part Transworld, Convergent, and MRS's Motion to Dismiss.  (ECF No. 28.)  The Court already dismissed Counts III and IV of the Amended Complaint when it dismissed Convergent from this action with prejudice.  Thus, to the extent Convergent moved to dismiss, its motion is moot because the Court has already dismissed all claims against it.  The Court will dismiss Counts II, V, and VI in their entirety.  Count I, which is solely against MRS, remains in part.  For the reasons articulated below, to the extent the Court dismisses Counts I, II, V, and VI, it does so without prejudice.

## I. Factual and Procedural Background

Ms. Rowland brings this consumer class action for violations of the Fair Debt Collections Practices Act ("FDCPA") and the Virginia Consumer Protection Act, Va. Code 59.1-196, *et seq.*, ("VCPA").  (ECF No. 10 ¶ 1.)

A.    **Factual Allegations**[3]

1.    **The Parties**

Ms. Rowland is a resident of Virginia.  (ECF No. 10 ¶ 6.)  Her claims against Defendants

stem from two student loan agreements that she entered into in 2006 and 2007 for $15,000 and

$20,000, respectively.  (ECF No. 10 ¶¶ 93, 95.)  Ms. Rowland has since defaulted on both loans

and Defendants have, either directly or indirectly, attempted to collect on the balance owed.

(ECF No. 10 ¶¶ 162–184.)  Ms. Rowland contends that "[t]he Defendants do not have the right

to collect any sums from [her] and the Class members because the accounts lack the

documentation necessary to prove the [] Trusts' ownership of the loans."  (ECF No. 10 ¶ 4(a).)

Ms. Rowland states that as a result of "Defendants' acts and omissions", she "and Class

members have sustained damages and losses in the form of (i) incurred costs to defend the

Defendants' improperly pursued debt collection actions, (ii) payments made to the Defendants

---

[3] In considering the Motions to Dismiss, (ECF Nos. 24, 26, 28), the Court will assume the well-pleaded factual allegations in the Amended Complaint to be true and will view them in the light most favorable to the Plaintiff.  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  "In the event of conflict between the bare allegations of the complaint and any attached exhibit . . . , the exhibit prevails."  *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

Additionally, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed."  *Witthohn v. Fed. Ins. Co*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (per curiam) (citations omitted).

which were not lawfully owed, and (iii) stress, worry, frustration, and anxiety related to the

Defendants' debt collection activities." (ECF No. 10 ¶ 5.)

### a.    The Trusts

The Trusts are two of fifteen Delaware statutory trusts created between 2001 and 2007 to

"acquir[e] purported consumer debts." (ECF No. 10 ¶¶ 2, 7, 44.) Defendants treat the Trusts "as

a single entity." (ECF No. 10 ¶ 8.) The Trusts' principal business involves "purchasing and

taking assignment of student loan credit accounts originally extended by other creditors, which

they then seek to enforce against the borrowers through" routine loan servicing and debt

collection. (ECF No. 10 ¶¶ 86, 89.) This includes demands, invoices, collection letters, lawsuits,

and post-judgment collection efforts. (ECF No. 10 ¶¶ 86, 89.) They have no employees. (ECF

No. 10 ¶¶ 2, 7.) Without employees, the Trusts act exclusively through agents and contractors.

(ECF No. 10 ¶¶ 2, 7, 88, 91.)

### b.    Transworld

Transworld acts as the "[S]pecial [S]ubservicer" for all fifteen National Collegiate

Student Loan Trusts, which includes the 2006-4 Trust and 2007-4 Trust. (ECF No. 10 ¶¶ 7, 44,

64.) In this role, Transworld "oversees the collection of student loans that go into default."

(ECF No. 10 ¶ 65.) Transworld "directs and controls the actions of various collection agencies,

including MRS and Convergent. (ECF No. 10 ¶ 12.)

### c.    MRS and Convergent

MRS and Convergent are collection agencies that "regularly collect or attempt to collect

debts, directly or indirectly, that are owed or asserted to be owed or due to others." (ECF No. 10

¶ 12.) Transworld hired both entities "to carry out part of its consumer collections business in

the name of the Trusts." (ECF No. 10 ¶ 12.)  As noted above, Plaintiff voluntarily dismissed Convergent from this action with prejudice.  (ECF Nos. 41, 48.)

### d.   U.S. Bank

U.S. Bank is a for-profit bank that conducts business in Virginia.  (ECF No. 10 ¶ 13.)  On March 1, 2009, the Trusts' Owner Trustee, Wilmington Trust Company, on behalf of multiple National Collegiate Student Loan Trusts, including the 2006-4 Trust, entered into a Special Servicing Agreement with First Marblehead Education Resources Inc ("FMER") and U.S. Bank.  (ECF No. 10 ¶¶ 15, 31; ECF No. 10-4, at 2, 21–25.)[4]  The Special Servicing Agreement designated FMER as the Special Servicer and U.S. Bank as the Back-Up Special Servicer.  (ECF No. 10 ¶¶ 15, 31; ECF No. 10-4, at 2).  The Special Servicing Agreement required the Special Servicer to, *inter alia*, take necessary actions to enforce and collect on delinquent and defaulted student loans.  (ECF No. 10-4, at 2–3.)

As Back-Up Special Servicer, U.S. Bank was required to assume the role of Successor Special Servicer if FMER resigned or otherwise was unable to perform.  (ECF No. 10-4, at 8.)  Regardless of whether U.S. Bank served as Back-Up Special Servicer or Successor Special Servicer, the Special Servicing Agreement prohibited U.S. Bank from "undertak[ing] direct collection or enforcement activities."  (ECF No. 10-4, at 8.)  In 2012, FMER resigned as Special Servicer and U.S. Bank assumed its role as Successor Special Servicer.  (ECF No. 10 ¶ 15; ECF No. 10-4, at 8.)

---

[4] Schedule A to the Special Servicing Agreement does not list the 2007-4 Trust as a party to the Agreement.  (*See* ECF No. 10-4, at 25.)

### 2.   The Loans At Issue and Ms. Rowland's Subsequent Default

In 2006, Ms. Rowland executed a student loan agreement for $15,000 with Bank of America, N.A. (the "2006 Loan" or "BofA Loan"); one year later, Ms. Rowland executed a second student loan agreement for $20,000 with JP Morgan Chase Bank, N.A. (the "2007 Loan" or "Chase Loan") (collectively, the "Loans"). (ECF No. 10 ¶¶ 93–95.) Ms. Rowland's brother cosigned both Loans. (ECF No. 10 ¶¶ 93, 95.)

Ms. Rowland states that neither the 2006-4 Trust nor the 2007-4 Trust currently "own the alleged debt, nor can [they] produce evidence that any debt is owed [to them]." (ECF No. 10 ¶¶ 138, 143.)[5]

Ms. Rowland states that "Defendants' continued collection attempts caused Plaintiff to make some payments" to the 2006 Loan, but she has failed to make any payments on the 2006 Loan "since at least 2014." (ECF No. 10 ¶ 97.) She has never made any payments on the 2007 Loan. (ECF No. 10 ¶ 98.)[6]

---

[5] Exhibits to the Amended Complaint suggest, but do not conclusively establish that, after origination and prior to the first payment due date, the 2006 Loan was assigned the 2006-4 Trust, and the 2007 Loan was assigned to the 2007-4 Trust. (ECF No. 10-9, at 21 (showing first payment for January 2006 Loan was due on December 19, 2007), 23–38; ECF No. 10-7, at 25 (showing first payment for 2007 Loan was due on July 8, 2008), 27–40.)

Ms. Rowland explains that ECF No. 10-7 and 10-9 are "excerpts of rosters" from the Trusts' 2016 debt collection lawsuits that the Trusts provided "in place of a valid assignment." (ECF No. 42, at 9 (citing ECF No. 10-7, 10-9, and ECF No. 10 ¶¶ 100, 103); *see also* ECF No. 10 ¶¶ 78, 80.) Ms. Rowland alleges that at least portions of the documents in these Exhibits are "false and forged." (ECF No. 10 ¶¶ 25, 100, 103, 150(f).) The Trusts' 2016 debt collection lawsuits are discussed in more detail in Section I.A.3.a below.

[6] Although Ms. Rowland explicitly states that she "never made any payments on the Chase Loan", i.e., the 2007 Loan, she also alleges that she "has suffered an ascertainable loss, specifically the amount that Plaintiff paid Defendants towards the Chase Loan when the Defendant [] Trusts were unable to show it was assigned this loan." (ECF No. 10 ¶¶ 98, 126.)

### 3.   Timeline of Multiple Defendants' Efforts to Collect on the Loans

#### a.   The Trusts' 2016 Collection Lawsuits

On December 6, 2016 and December 8, 2016, each Trust initiated a separate collection lawsuit against Ms. Rowland in Virginia state court. (ECF No. 10 ¶¶ 99, 102.) Kristan M. Pettiford, a licensed attorney with a Virginia State Bar number, represented the Trusts and filed both lawsuits. (ECF No. 10-7, at 5; ECF No. 10-9, at 1.)

In the December 6, 2016 lawsuit, the 2007-4 Trust sought to recover $32,153.45 for the 2007 Loan, which reflected $27,728,23 as her principal loan balance and $4,425.22 in accrued interest. (ECF No. 10 ¶¶ 99–100.) In the December 8, 2016 lawsuit, the 2006-4 Trust sought to recover for $22,540.18 the 2006 Loan, which reflected $20,285.36 as her principal balance and $2,254.82 in accrued interest. (ECF No. 10 ¶¶ 102–103.) On October 13, 2017, the 2007-4 Trust voluntarily dismissed its lawsuit without prejudice. (ECF No. 10 ¶ 101; ECF No. 10-8, at 1.) Five months later, on March 21, 2018, the 2006-4 Trust also voluntarily dismissed its lawsuit without prejudice. (ECF No. 10 ¶ 104; ECF No. 10-10, at 1.)

#### b.   In Late 2021, Convergent Attempts to Collect on the 2006 Loan

In September 2021, Convergent began contacting Ms. Rowland via phone calls and letters seeking payment for the 2006 Loan. (ECF No. 10 ¶¶ 105–14.) Three times in October 2021 and four times in November 2021, Convergent called Ms. Rowland's workplace. (ECF No. 10 ¶ 113.) Each time, she was unable to speak with Convergent. (ECF No. 10 ¶ 113.) "In early November 2021", a Convergent employee "called [Ms.] Rowland's husband's cell phone". (ECF No. 10 ¶ 111.) Her husband "told her she had called the wrong number and ended the conversation." (ECF No. 10 ¶ 111.)

c. **In March 2022, Transworld Attempts to Collect on the 2007**
   **Loan**

Four months later, on March 10, 2022, Ms. Rowland received a collection letter from

Transworld seeking payment for the 2007 Loan on behalf of the 2007-4 Trust. (ECF No. 10

¶ 117.) Although by 2021 the Loans were "well beyond the statute of limitations for collection .

. . [Transworld] failed to inform Ms. Rowland that [it] could not legally sue her to collect the

debt." (ECF No. 10 ¶¶ 136–37.)

d. **"Sometime after April 15, 2022" through February 2023,**
   **MRS Attempts to Collect on the Loans**

Next, "[s]ometime after April 15, 2022" and continuing through February

2023, MRS contacted Ms. Rowland via letters and phone calls seeking payment on behalf of one

or both of the Trusts. (ECF No. 10 ¶¶ 120–33.) Like Transworld, "the communications from

MRS . . . failed to inform Ms. Rowland that [MRS] could not legally sue her to collect the [time-

barred] debt." (ECF No. 10 ¶ 137; *see also* ECF No. 10 ¶ 169.)

i. **April 2022 MRS Letter and Calls**

"Sometime after April 15, 2022, [Ms.] Rowland received a letter from [MRS]" for

amounts owed to the 2006-4 Trust. (ECF No. 10 ¶¶ 120–21.) On April 19 and 22, 2022, MRS

called Ms. Rowland's co-worker to "collect on a debt allegedly owed by [Ms.] Rowland and [her

co-signer] William Stanfield." (ECF No. 10 ¶ 123.) After these phone calls, Ms. Rowland's co-

worker began questioning Ms. Rowland "about the alleged debt[,] which affected her reputation

at the company and made her feel completely overwhelmed and harassed." (ECF No. 10 ¶ 124.)

MRS's phone calls also caused Ms. Rowland to feel "very anxious and nervous at work" and

"interfered with her ability to focus on work and family life." (ECF No. 10 ¶ 125.)

8

In late April 2022, MRS continued to call Ms. Rowland's cell phone and her workplace an unspecified number of times. (ECF No. 10 ¶ 127.)

### ii.      **May 2022 MRS Calls**

In May 2022, MRS again called Ms. Rowland's cellphone at least twice and her workplace at least once. (ECF No. 10 ¶¶ 127–129.) "On May 12, 2022 and May 31, 2022", Ms. Rowland received calls from an MRS employee seeking payment for the 2006 Loan. (ECF No. 10 ¶¶ 93, 128.) During the calls, the MRS employee "asked for her social security number and informed her that he was collecting on a debt that originated for $15,000 and that $28,469.10 was now owing with the last payment made on May 20, 2014." (ECF No. 10 ¶ 128.) The employee "offered a discount to settle the debt for $8,545.00." (ECF No. 10 ¶ 128.) On May 23, 2022, the MRS employee "called and again talked to Ms. Rowland's co-worker . . . asking for Ms. Rowland and saying he would call again later." (ECF No. 10 ¶ 129.)

### iii.      **June 2022 through February 2023 MRS Letters and Calls**

From June 2022 through February 2023, Ms. Rowland received eight collection letters from MRS regarding the Loans. (ECF No. 10  ¶¶ 130, 133.) Ms. Rowland attaches these eight letters to her Amended Complaint. (ECF No. 10-11–10-19.)

In a letter dated June 8, 2022 from MRS to Ms. Rowland, MRS offers Ms. Rowland a "ONE-TIME payment of $14,235.00 by 6/17/2022 to resolve [her] account." (ECF No. 10-11, at 1; ECF No. 10-13 at 1 (identical copies of June 8, 2022 letter) (emphasis in original).) The letter further states: "If you need additional time to respond to this offer, please contact us. We are not obligated to renew this offer." (ECF No. 10-13, at 1.)

In a letter dated July 11, 2022 from MRS to Ms. Rowland, MRS offers "three options to assist [her to] resolve the outstanding balance on [her] account(s)", offering (1) a "monthly

9

payment plan on the full balance"; (2) that Ms. Rowland "pay $15,658.02 in ONE PAYMENT to be received" by July 25, 2002; and (3) that Ms. Rowland "make TWO PAYMENTS of $9,964.19 each" by July 25, 2022 and August 22, 2022. (ECF No. 10-14, at 1.)  The letter states: "We are not obligated to renew this offer." (ECF No. 10-4, at 1.)

In subsequent letters dated August 5, 2022, September 12, 2022, October 17, 2022, and February 13, 2023 from MRS to Ms. Rowland, MRS again provides three payment options for Ms. Rowland to "resolve the outstanding balance on [her] account(s)" for the 2006 Loan, the 2007 Loan, or both. (ECF No. 10-16, at 1; ECF No. 10-17, at 1; ECF No. 10-18, at 1; ECF No. 10-19, at 1; ECF No. 10 ¶ 133.)  Like the July 11, 2022 letter, these letters state that "We are not obligated to renew this offer", and provide specific payment plan deadlines. (ECF No. 10-16, at 1; ECF No. 10-17, at 1; ECF No. 10-18, at 1; ECF No. 10-19, at 1.)

Overlapping with this time period, from June 17, 2022 through October 17, 2022, Ms. Rowland also received at least seven additional phone calls and an unspecified number of voice messages from MRS. (ECF No. 10 ¶ 132.)  These additional telephone calls occurred on "June 17, 2022, June 20, 2022, July 11, 2022, July 13, 2022, August 5, 2022, September 12, 2022 and October 17, 2022." (ECF No. 10 ¶ 132.)

Ms. Rowland maintains that MRS's attempts to collect on her debt involved the use of "false, deceptive, or misleading representations or means." (ECF No. 10 ¶ 166.)

**B.**   <u>**Procedural Background**</u>

On April 17, 2023, Ms. Rowland filed her first Class Action Complaint pursuant to Fed. R. Civ. P. 23[7] against Defendants Transworld, MRS, Convergent, the Trusts, and U.S. Bank.

---

[7] Federal Rule of Civil Procedure 23 provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members" when certain requirements are satisfied. *See* Fed. R. Civ. P. 23.

(ECF No. 1.)  On July 10, 2023, prior to any responsive pleadings, Ms. Rowland her Amended

Class Action Complaint (the "Amended Complaint") against the same group of Defendants.

(ECF No. 10.)  In her Amended Complaint, Ms. Rowland asserts six counts:

| | |
|---|---|
| **Count I:** | Violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e (against MRS) |
| **Count II:** | Violations of the FDCPA, 15 U.S.C. § 1692f (against MRS) |
| **Count III:** | Violations of the FDCPA, 15 U.S.C. § 1692e (against Convergent) |
| **Count IV:** | Violations of the FDCPA, 15 U.S.C. § 1692f (against Convergent) |
| **Count V:** | Vicarious Liability (against Transworld, U.S. Bank, and the Trusts) |
| **Count VI:** | Violation of the Virginia Consumer Protection Act ("VCPA") (against Transworld and the Trusts) |

(ECF No. 10, at 32–36.)

On October 13, 2023, Plaintiff voluntarily dismissed Convergent from this action with

prejudice.  (ECF Nos. 41, 48.)  Accordingly, Counts III and IV have already been dismissed with

prejudice.  On March 4, 2024, Ms. Rowland filed a Motion for Leave to File Supplemental

Authority, (ECF No. 49), which Defendants opposed, (ECF No. 50).  On September 24, 2024,

the Court granted the Motion for Leave to File Supplemental Authority, stating that it "will

consider the case to the extent it bears relevance."  (ECF No. 52.)[8]

The Defendants' respective Motions to Dismiss are fully briefed.  For the reasons

articulated below, the Court will grant the Trusts' Motion to Dismiss, (ECF No. 24), will grant

---

[8] In her Motion to File Supplemental Authority, Ms. Rowland identified *Green v. Portfolio Recovery Assocs.*, LLC, 80 Va. App. 119, 139, *reh'g en banc granted, mandate stayed,* 80 Va. App. 472 (Va. App. 2024).  (ECF Nos 49, 49-1.)  The Court will not analyze the applicability of *Green* at this juncture.  The parties are free to argue its relevance should Ms. Rowland seek to file a Second Amended Complaint.

U.S. Bank's Motion to Dismiss, (ECF No. 26), and will grant in part and deny in part

Transworld, Convergent, and MRS's Motion to Dismiss, (ECF No. 28).

## II.  Standard of Review

### A.    Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint;

importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.

1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356

(1990)).  To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual

information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for

relief must contain . . . a short and plain statement of the claim showing that the pleader is

entitled to relief.").  Mere labels and conclusions declaring that the plaintiff is entitled to relief

are not enough.  *Twombly*, 550 U.S. at 555.  Thus, "naked assertions of wrongdoing necessitate

some factual enhancement within the complaint to cross the line between possibility and

plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)

(quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a

reasonable inference that the defendant is liable for the misconduct alleged.  *Twombly*, 550 U.S.

at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This analysis is context-specific

and requires "the reviewing court to draw on its judicial experience and common sense."

*Giacomelli*, 588 F.3d at 193 (citation omitted).  The court must assume all well-pleaded factual

allegations to be true and determine whether, viewed in the light most favorable to the plaintiff,

12

they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty, Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (concluding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011))).

## III. Analysis

Defendants seek relief on numerous, and often alternative, grounds.  With respect to Counts I and II, the FDCPA claims, MRS seeks relief on, *inter alia*, the following grounds:  (1) to the extent Counts I and II are premised on conduct predating April 17, 2022, they are time-barred; (2) to the extent Counts I and II are premised on MRS's alleged misrepresentations that the Trusts' assignment of the Loans is valid, Plaintiff lacks prudential standing to assert this claim; (3) MRS had no obligation under the FDCPA to conduct a material investigation of the Trusts' loan ownership prior to collection attempts; (4) to the extent Counts I and II are premised on MRS's purported failure to inform Plaintiff that the Loans were beyond the statute of limitations under applicable Virginia law, this is not actionable under the FDCPA; (5) to the extent Counts I and II are premised on MRS's misrepresentations regarding the principal balance of the Loans, these allegations are contradicted by the Amended Complaint's Exhibits; and (6) to the extent Count II is premised on MRS calling her at work, Ms. Rowland fails to plausibly allege a violation of 15 U.S.C. § 1692f.  (ECF No. 29, at 10–20; ECF No. 46, at 5).

With respect to Count IV, vicarious liability, Transworld, U.S. Bank, and the Trusts argue, *inter alia*, that vicarious liability is a remedy, and not an independent cause of action in Virginia.  (ECF No. 25, at 15, 22; ECF No. 27, at 10–11; ECF No. 29, at 20–21.)

Finally, with respect to Count VI brought under the VCPA, Transworld and the Trusts argue, *inter alia*, that this claim must be dismissed because unauthorized practice of law is not actionable under the VCPA. (ECF No. 25, at 22; ECF No. 29, at 21.)

Accepting Ms. Rowland's factual allegations as true and drawing all reasonable inferences in her favor, the Court will dismiss Counts II, V, and VI without prejudice. Count I remains only to the extent is premised on the allegation that MRS used language during collection attempts that would mislead an unsophisticated debtor into believing that Ms. Rowland's debt remained legally enforceable. The remainder of Count I will be dismissed without prejudice.

### A.    As Alleged, Ms. Rowland's FDCPA Claims Premised on Conduct Predating April 17, 2022 Are Time-Barred

As a threshold matter, the Court concludes that to the extent Ms. Rowland bases any of her remaining FDCPA claims on conduct that predates April 17, 2022, those claims are time-barred, as alleged.

### 1.    Legal Standard:  The FDCPA's One-Year Statute of Limitations

An action under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d).[9] "That language unambiguously sets the date of the violation as the event that starts the one-year limitations period." *Rotkiske v. Klemm*, 589 U.S. 8,

---

[9] 15 U.S.C. § 1692k(d) provides:

**(d) Jurisdiction**

> An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

15 U.S.C. § 1692k(d)

13 (2019); *see also Bender v. Elmore & Throop, P.C.*, 963 F.3d 403, 407 (4th Cir. 2020) (citing *Rotkiske*, 140 S. Ct. at 360). "The statute of limitations begins to run when the communication that violates the FDCPA is sent." *Babakaeva v. PTR Invs., Inc.*, No. 2:21cv267 (RAJ), 2022 WL 807381, *6 (E.D. Va. Feb. 11, 2022) (quoting *Richardson v. Shapiro & Brown, LLP*, 751 F. App'x 346, 349 (4th Cir. 2018)), *aff'd*, No. 22-1272, 2022 WL 17103767 (4th Cir. Nov. 22, 2022).

The Supreme Court of the United States has clarified that there is no "discovery rule" for FDCPA claims, so "absent the application of an equitable doctrine, the statute of limitations in § 1692k(d) begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered." *Rotkiske*, 589 U.S. at 10. In *Rotkiske*, the Supreme Court declined to decide "whether the text of 15 U.S.C. § 1692k(d) permits the application of equitable doctrines", noting that the plaintiff "failed to preserve this issue before the Third Circuit . . . and failed to raise this issue in his petition for certiorari." *Id.* at 15, 15 n.3.

The United States Court of Appeals for the Fourth Circuit has explained that "[w]hen Congress makes a limitations period a jurisdictional prerequisite . . . courts may not toll the limitations period on any equitable grounds." *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 546 (4th Cir. 2019). While "headings and titles are not meant to take the place of the detailed provisions of the text," *Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519, 528 (1947), they remain valuable tools for resolving ambiguities in statutory text. *See I.N.S. v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text.").

Subsection (d) of § 1692k, which articulates the FDCPA's one-year statute of limitations, is entitled "Jurisdiction." § 1692k(d). While this heading is "not meant to take the place of the

detailed provisions of the text", it nonetheless offers persuasive information. *See Bhd. of R.R.*

*Trainmen*, 331 U.S. at 528; *I.N.S.*, 502 U.S. at 189. Accordingly, "courts must apply" this

"restrictive statute of limitations for FDCPA actions . . . in a jurisdictional manner." *Jackson v.*

*Ocwen Loan Servicing, LLC*, No. 3:17cv159 (DJN), 2018 WL 5808726, at *3 (E.D. Va. Feb. 5,

2018), *report and recommendation adopted*, No. 3:17cv159 (MHL), 2018 WL 5809411 (E.D.

Va. Mar. 8, 2018), *aff'd*, 747 F. App'x 159 (4th Cir. 2019) (internal quotation marks and citation

omitted).

### 2. As Alleged, Equitable Tolling Cannot Save Ms. Rowland's FDCPA Claims Premised on Conduct Predating April 17, 2022

Ms. Rowland initiated this action on April 17, 2023. (ECF No. 1.) Applying the

FDCPA's jurisdictional one-year statute of limitations, as alleged, the Court will dismiss Ms.

Rowland's FDCPA claims to the extent they are premised on conduct that predates April 17,

2022. (ECF No. 29, at 10.)

Ms. Rowland asks the Court to apply equitable tolling to her FDCPA claims based on

fraudulent concealment, arguing that "[t]he test is whether a reasonable person would have

known about the lack of Trust ownership until April 11, 2022."[10] (ECF No. 44, at 17.) Ms.

Rowland contends that "[i]ssues with the assignment were only discovered after [she] hired an

attorney to investigate after additional years of debt collection calls and letters and after the

CFPB and other attorneys generals entered into consent orders with Defendant [Transworld]."

(ECF No. 44, at 17.) First, as a threshold matter, for the reasons articulated in Section III.B.2, as

alleged, Ms. Rowland lacks prudential standing to raise FDCPA claims based on the validity of

the Trusts' assignment to the Loans, rendering this argument moot. Second, even assuming

---

[10] The Court presumes that the reference to April **11**, 2022 is a scrivener's error, as one year prior to the initiation of this action was April **17**, 2022.

without deciding that equitable tolling based on fraudulent concealment applies to the FDCPA generally, the Court is not persuaded at this juncture by Ms. Rowland's argument that equitable tolling would apply here, even if she did have prudential standing to raise FDCPA claims based on the validity of the Trusts' assignment of the Loans.

To properly invoke equitable tolling" based on fraudulent concealment, a plaintiff must demonstrate: "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Edmonson*, 922 F.3d at 548 (internal quotations and citations omitted). Ms. Rowland fails to allege any facts in her Amended Complaint demonstrating that she exercised due diligence. The Trusts sued Ms. Rowland in state court to collect on the Loans in late 2016. By that point, she was on inquiry notice to investigate the basis of the Trusts' claims against her. *Resol. Tr. Corp. v. Walde*, 856 F. Supp. 281, 289 (E.D. Va. 1994) ("A plaintiff aware of his [or her] injury is on 'inquiry notice' to discover his [or her] cause of action by use of 'ordinary diligence.'") (quoting *STB Mktg. Corp. v. Zolfaghari*, 393 S.E.2d 394, 397 (Va. 1990)). Despite being on inquiry notice by late 2016, Ms. Rowland waited no earlier than 2022 to investigate the validity of the Trusts' assignment of the Loans, (ECF No. 10 ¶¶ 133–34), and did not initiate this action until April 17, 2023. (ECF No. 1.) Ms. Rowland did not challenge the Trusts' ownership of the debts, nor did she challenge the amounts represented as owed. As a result, she has not plausibly alleged that she exercised due diligence to investigate the Trusts' assignment of the Loans, and, as alleged, is not entitled to equitable tolling based on fraudulent concealment.

The vast majority of conduct relating to Ms. Rowland's remaining FDCPA claims postdates April 17, 2022. The Amended Complaint brings two FDCPA claims against MRS

(Counts I and II) and two against Convergent (Counts III and IV).  (ECF No. 10, at 32–35.)
Although all of Convergent's alleged conduct predates April 17, 2022, the question of whether
Ms. Rowland's FDCPA allegations against Convergent are time-barred is, of course, moot.  On
October 13, 2023, after Transworld, Convergent, and MRS filed their Motion to Dismiss, (ECF
No. 28), Ms. Rowland voluntarily dismissed Convergent from this action with prejudice.  (ECF
Nos. 41, 48.)  Convergent's dismissal resulted in the dismissal of Counts III and IV of the
Amended Complaint.[11]

Turning to Counts I and II, the majority of Plaintiff's FDCPA claims against MRS
involve conduct that occurred between April 19, 2022 and February 13, 2023.  MRS correctly
concedes that conduct is timely alleged.  (ECF No. 29, at 10–11.)  Ms. Rowland also premises
her FDCPA claim in limited part on the allegation that "[s]ometime after April 15, 2022, [she]
received a letter from [MRS]" for amounts owed to the 2006-4 Trust.  (ECF No. 10 ¶¶ 120–22.)
The letter (attached to the Amended Complaint as "Exhibit L") is dated April 12, 2022, and is
postmarked April 15, 2022.  (ECF No. 10-12, at 1, 3.)  Because MRS sent this letter on April 15,
2022, the statute of limitations for this communication likely began to run on April 15, 2022, and
thus any FDCPA action predicated on this letter is time-barred.  *See Babakaeva*, 2022 WL
807381, *6.[12]

---

[11] In her Opposition, which Ms. Rowland filed after her voluntary dismissal of
Convergent, Ms. Rowland references "her FDCPA claims as to all Defendants" which would
suggest that Transworld also violated the FDCPA.  (See ECF No. 42, at 9–10.)  Because the
Amended Complaint names only MRS, however, the Court cannot infer that Transworld is added
as a Defendant to Count I at this time.  *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v.
OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (It is well-established that
parties cannot amend their complaints through briefing).

[12] Ms. Rowland attaches a July 13, 2022 letter that is identical to the April 15, 2022 letter,
except that it lists a greater amount owed.  (*Compare* ECF No. 10-12 with 10-15.)

In Count II, Ms. Rowland contends that MRS violated the FDCPA by "communicat[ing] with her husband." (ECF No. 10 ¶ 170.) Even reading the Amended Complaint in a light most favorable to Ms. Rowland, the Amended Complaint contains only the allegation that a Convergent employee, not an MRS employee, spoke with Ms. Rowland's husband. (ECF No. 10 ¶¶ 105, 111.) Regardless, any call to Ms. Rowland's husband occurred no later than early November 2021, and any FDCPA claim predicated on this call is time-barred as alleged. (ECF No. 10 ¶¶ 105, 111.) The Court must dismiss Counts I and II to the extent they are premised on purported FDCPA violations that predate April 17, 2022.

### B.    As Alleged, Ms. Rowland Fails to State the Basis for a Majority of Her FDCPA Claims in Count I, and any FDCPA Claim in Count II

The FDPCA "authorizes private civil actions against debt collectors who engage in certain prohibited practices." *Rotkiske*, 589 U.S. at 9. Among other things, the purpose of the act is "to eliminate abusive debt collection practices by debt collectors [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged[.]" 15 U.S.C. § 1692e. Section 1692e of the FDCPA forbids the use of "any false, deceptive, or misleading representation or means" to collect a debt and provides a non-exhaustive list setting forth examples of prohibited conduct. *See* § 1692e. These examples include making a false representation of "the character, amount or legal status of any debt," § 1692e(2)(A), and using "any false representation or deceptive means to collect or attempt to collect any debt," § 1692e(10). The FDCPA also prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." § 1692f. This includes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." § 1692f(1).

19

Ms. Rowland brings her FDCPA claims against MRS based on "violat[ions] of 15 U.S.C. § 1692e, and/or its subsections" (Count I) and "15 U.S.C. § 1692f and/or § 1692f(1)" (Count II). (ECF No. 10 ¶¶ 167, 171.) For the reasons articulated below, as alleged, the majority of bases for Ms. Rowland's FDCPA claims against MRS do not prevail. However, as alleged, Ms. Rowland plausibly states a claim in Count I for a violation of 15 U.S.C. § 1692e to the extent it is premised on MRS using language in its collection attempts that would mislead an unsophisticated consumer into believing that the Loans remained legally enforceable. The Court will dismiss the remainder of Count I, and will dismiss Count II in its entirety.

### 1. To the Extent Count II is Based on the Same Alleged Misconduct that Undergirds Count I, as Alleged, It Must be Dismissed

A portion of Count II, Ms. Rowland's § 1692f claim, is based on the same misconduct as a portion of Count I, Ms. Rowland's § 1692e claim. To the extent Count II is duplicative of Count I as to the Loan amounts, the Court must dismiss Count II.

#### a. Legal Standard: FDCPA § 1692f Violations

Section 1692f broadly provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. "[T]he courts use § 1692f to punish conduct that [the] FDCPA does not specifically cover." *Lembach v. Bierman*, 528 F. App'x 297, 304 (4th Cir. 2013). For this reason, "a § 1692f cause of action may not be based on the 'same alleged misconduct that undergirds [a] § 1692e claim.'" *Dudley v. Focused Recovery Sols., Inc.*, No. 4:17-cv-10 (MHL), 2017 WL 2981345, at *4 n.3 (E.D. Va. July 12, 2017) (quoting *Biber v. Pioneer Credit Recovery, Inc.*, No. 1:16-cv-804, 2017 WL 118037, at * 11 (E.D. Va. Jan. 11, 2017)); *see also Jennings v. Dynamic Recovery Sols. LLC*, 441 F. Supp. 3d 106, 115 (D. Md. 2020) (dismissing § 1692f claim that was not "'separate and distinct' from the conduct covered by" plaintiffs' 1692e claims.)

**b.    To the Extent Count II is Duplicative of Count I As to the Loan Amounts, it Cannot Survive as Alleged**

Ms. Rowland brings Count I of the Amended Complaint under § 1692e of the FDCPA, and Count II under § 1692f.  In Count I, Ms. Rowland alleges, *inter alia*, that "Defendant MRS used false, deceptive, or misleading representations or means in connection with the collection of an alleged debt when it . . . [m]ade false or deceptive statements to Ms. Rowland during collection calls to her."  (ECF No. 10 ¶ 166(k).)  This allegation is duplicative of a portion of Count II, which alleges that, during phone calls to Ms. Rowland, "it was unfair and unconscionable . . . to provide different original balance amounts [] for the alleged debt without informing her that they could not legally sue her for the alleged debt because it was beyond the statute of limitations."  (ECF No. 10 ¶ 169.)  Because this allegation is just an example of one of the same "false, deceptive, or misleading" conduct during collection calls that undergirds Ms. Rowland's § 1692e claim, this portion of Count II will be dismissed, and will be considered to be subsumed within Count I. *See Dudley*, 2017 WL 2981345 at *4 n.3; *see also Jennings*, 441 F. Supp. 3d at 115 (dismissing § 1692f claim that was premised on conduct that was neither separate nor distinct from conduct already covered by plaintiff's § 1692e claims).

**2.    To the Extent Count I is Based on the Validity of the Loans' Assignment to the Trusts, as Alleged, it Fails Due to Lack of Prudential Standing**

Ms. Rowland admits that she entered into the loan agreements for the Loans.  (ECF No. 10 ¶¶ 93, 95.)  She contests, however, the validity of the Trusts' assignment of the Loans.  (ECF No. 10 ¶¶ 81, 83, 87.)  On this basis, she contends in Count I that MRS violated the FDCPA by misrepresenting that the Trusts owned the Loans and, conversely, that she owed the Loans to the Trusts.  (ECF No. 10 ¶¶ 140, 143, 166(a)–(h), (j).)

In claiming this, Ms. Rowland posits the seemingly commonsense suggestion that the Trusts should not be able to collect on her two loans because they cannot show any appropriate chain of title for the loans they are trying to collect from her. How, she asks, can the Trust collect a loan they may not own? Based on relevant case law, as alleged, Ms. Rowland lacks prudential standing to raise this challenge. As a result, the Court will dismiss Count I to the extent it is premised on this challenge, but does so without prejudice. Ownership may or may not be raised based on the Amended Complaint at the appropriate procedural stage.

### a.  Legal Standard: Prudential Standing to Bring FDCPA Claim Premised on Validity of an Assignment of Debt

"[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

The "prudential standing rule . . . normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Warth*, 422 U.S. at 509. "[T]he plaintiff generally must assert his [or her] own legal rights and interests, and cannot rest his [or her] claim to relief on the legal rights or interests of third parties." *Id.* at 499.

Under Virginia law, where a plaintiff is neither a party to an assignment of a loan nor the intended beneficiary of the assignment, the plaintiff lacks standing to dispute validity of the assignment. *See, e.g.*, *Wolf v. Fed. Nat. Mortg. Ass'n*, 512 F. App'x 336, 342 (4th Cir. 2013); *see also Hardnett v. M&T Bank*, 204 F. Supp. 3d 851, 858 (E.D. Va. 2016), *aff'd sub nom. Hardnett v. M & T Bank*, 699 F. App'x 242 (4th Cir. 2017), *and aff'd sub nom. Hardnett v. M & T Bank*, 699 F. App'x 242 (4th Cir. 2017) (citations omitted) (granting motion to dismiss wrongful foreclosure claim where plaintiffs lacked standing to challenge securitization of loan).

A clear majority of courts have held that, where a plaintiff lacks standing to dispute an assignment under applicable state law, the plaintiff may not base an FDCPA claim on a challenge to the validity of that assignment. *See, e.g.*, *Dicion v. Mann Mortg., LLC*, 718 F. App'x 476, 478 (9th Cir. 2017) (FDCPA claim failed where plaintiff lacked standing to challenge validity of mortgage assignment); *Sedlacek v. Ocwen Loan Servicing, LLC*, No. 1:18-CV-542-WMR-LTW, 2019 WL 2344935, at \*8 (N.D. Ga. Feb. 15, 2019), *report and recommendation adopted*, No. 1:18-CV-00542-WMR, 2019 WL 2344137 (N.D. Ga. May 6, 2019), *aff'd*, 844 F. App'x 110 (11th Cir. 2021) (granting motion to dismiss FDCPA claim where plaintiff lacked standing to challenge validity of security deed assignment); *Clark v. Lender Processing Servs., Inc.*, 949 F. Supp. 2d 763, 771 (N.D. Ohio 2013), *as corrected* (July 22, 2013), *aff'd sub nom. Clark v. Lender Processing Servs.*, 562 F. App'x 460 (6th Cir. 2014) (granting motion to dismiss FDCPA claim where plaintiff lacked standing to challenge validity of assignment of notes and mortgages).

> **b.** **As Alleged, Ms. Rowland Lacks Standing to Challenge the Trusts' Assignment of Her Loans**

Here, Ms. Rowland is neither a party to the Trusts' assignment of her Loans nor a beneficiary of the assignment. As a result, under Virginia law, she has no standing to dispute validity of the assignment. *See, e.g.*, *Wolf*, 512 F. App'x at 342. Because Ms. Rowland lacks standing to challenge the validity of the Trusts' assignment of her Loans, her FDCPA claims premised on any such challenge must fail.[13] *See Dicion*, 718 F. App'x at 478; *Sedlacek*, 2019

---

[13] In her Opposition, Ms. Rowland cites *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 124 (4th Cir. 2014) for the proposition that "a misrepresentation as to an assignment state[s] a claim under the FDCPA" and as a result, her FDCPA claims premised on challenging the validity of the Trusts' assignment of the Loans are actionable. (ECF No. 44, at 2.) However, in *Powell*, the "record clearly show[ed] that the judgment against [plaintiff] had indeed been assigned to [defendant] and that defendants' representation of this fact was therefore not false."

WL 2344935, at *8; *Clark*, 949 F. Supp. 2d at 771.  The Court will dismiss Count I to the extent

it is premised on a challenge to the validity of the Trusts' assignment of the Loans.

> **3.    Ms. Rowland Has Not Stated a Claim that MRS Was Obligated Under the FDCPA To Conduct a Material Investigation of the Trusts' Loan Ownership Prior to Its Collection Attempts**

Next, construing the Amended Complaint favorably as to Ms. Rowland, MRS states that

the Amended Complaint bases Counts I and II in part on MRS's failure to conduct "'a material

investigation' of the Trusts' loan ownership or the sufficiency of the chain of title documentation

prior to collection attempts". (ECF No. 29, at 14 (citing ¶¶ 150(b)(c)).)  MRS argues that "[t]he

FDCPA does not require a debt collector to engage in an independent investigation of the debt

referred for collection." (ECF No. 29, at 14 (collecting cases).)  On this record, the Court must

conclude that  the FDCPA does not require a debt collector to engage in an independent

---

782 F.3d at 125.  As a result, the United States Court of Appeals for the Fourth Circuit in *Powell* was not required to, and did not, reach the question of whether a plaintiff lacks prudential standing to challenge the validity of an underlying assignment of his or her debt.  *See United States v. Day*, 700 F.3d 713, 721 (4th Cir. 2012) (Unlike constitutional standing, prudential standing is not a jurisdictional question, and may be abandoned in "favor of a straightforward disposition on the merits.") (citation and quotation marks omitted).  Ms. Rowland also cites to *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 249 (3d Cir. 2014) for the proposition that she was not required "to avail herself of the right to request verification of the debt." (ECF No. 44, at 3.)  The Court need not address *McLaughlin* at this procedural juncture because it concludes that, as alleged, Ms. Rowland lacks prudential standing to challenge the Trusts' assignment of her Loans.

Additionally, Ms. Rowland cites to *Gosse v. Transworld Sys., Inc.*, No. 3:20-CV-1446, 2022 WL 2128631 (M.D. Pa. May 3, 2022) with the broad observation that "[t]he FDCPA claims in *Gosse* also asserted allegations against the [d]efendants relating to collection efforts that a particular Trust owned certain loans." (ECF No. 44, at 1–2.)  In *Gosse*, the court dismissed the 2007-4 Trust from the action without any reference to plaintiffs' standing to bring any of their claims against any defendant.  *See generally*, *Gosse*, 2022 WL 2128631, at *3 (M.D. Pa. May 3, 2022).  As a result, *Gosse* does not assist the Court in resolving the issue of whether or not Ms. Rowland lacks prudential standing to bring her FDCPA claims.

investigation of the debt referred for collection.  *See Sayyed v. Wolpoff & Abramson, LLP*, 733 F.

Supp. 2d 635, 646 (D. Md. 2010) (collecting cases).

Count II asserts a claim on two additional bases for violations:  (1) "it was unfair and

unconscionable to call Ms. Rowland at work and at home and to provide different original

balance amounts in for the alleged debt without informing her that they could not legally sue her

for the alleged debt because it was beyond the statute of limitations"; and (2) "It was also unfair

and unconscionable to call her at work and to communicate with her husband and co-workers

when they had her phone number and knew where she lived." (*See* ECF No. 10 ¶¶ 168–71.)

The Court has already dismissed Count II to the extent it is based on conduct that undergirds Ms.

Rowland's claim in Count I.  *See* Section III.B.1, *supra*.  The Court will dismiss Count I to the

extent it is premised on MRS's purported failure to conduct a material investigation of the

Trusts' ownership of the Loans prior to its collection attempts.

> **4.      Count I Survives to the Extent it Relies on Allegations that MRS Used Language that Would Mislead an Unsophisticated Debtor Into Believing that the Loans Remained Legally Enforceable**

The Court now turns to the third basis for Count I—that MRS violated the FDCPA by

failing to inform her that the Loans were time-barred, and therefore she could not be sued for

these debts. (ECF No. 10 ¶¶ 136, 166(j).)  Ms. Rowland does not allege that that any of the MRS

communications at issue contain any threat of litigation on the purportedly time-barred debt.

(*See generally*, ECF No. 10; ECF Nos. 10-11–10-19.)  In her Opposition, Ms. Rowland does not

suggest that she alleged otherwise, but emphasizes that MRS's failure to inform her that her

debts were time-barred was deceptive and misleading. (ECF No. 44, at 7–8.)

Here, Ms. Rowland plausibly alleges that MRS used language in its collection attempts that would mislead an unsophisticated consumer into believing that her debt remained legally enforceable. As a result, she plausibly alleges violations of § 1692e in Count I on this basis.

### a.    Legal Standard: FDCPA § 1692e Violations

"To establish an FDCPA violation, the plaintiff must show that (1) the debtor is a consumer as defined in §1692a(3), (2) the defendant is a debt collector as defined in § 1692a(6), and (3) the defendant has committed some act or omission violating the statute." *Foley v. Mary Washington Healthcare Servs., Inc.*, No. 3:21-cv-239 (JHB), 2021 WL 3193177, at *3 (E.D. Va. July 28, 2021) (citation omitted).[14]

The FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," 15 U.S.C. § 1692e(10), and the "false representation of the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A), are violations of the FDCPA.

"Whether a communication is false, misleading, or deceptive in violation of § 1692e is determined from the vantage of the 'least sophisticated consumer.'" *Conteh v. Shamrock Cmty. Ass'n, Inc.*, 648 F. App'x 377, 379 (4th Cir. 2016) (quoting *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014)). "When viewing a misstatement from the perspective of the 'least sophisticated consumer,' [courts] 'consider how a naive consumer would interpret the statement.'" *Id.* (quoting *Elyazidi v. SunTrust Bank*, 780 F.3d 227, 234 (4th Cir. 2015)).

---

[14] MRS does not challenge that Ms. Rowland is a consumer or that MRS is a debt collector under the FDCPA. (*See generally*, ECF No. 29.)

"However, [courts] do not give credit to 'bizarre or idiosyncratic interpretations'; [rather the court must] assume 'a quotient of reasonableness and . . . a basic level of understanding and willingness to read with care.'" *Elyazidi*, 780 F.3d at 234 (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996)). Moreover, "'[a] misstatement must be material to sustain a claim under 15 U.S.C. § 1692e; that is, the misstatement must have the potential to 'frustrate [the least sophisticated] consumer's ability to intelligently choose his or her response,' or must be the type of misstatement that 'would have been important to the consumer in deciding how to respond to efforts to collect the debt.'" *Conteh*, 648 F. App'x at 379 (quoting *Powell*, 782 F.3d at 127).

> **b.    Legal Standard:  When Collection Attempts on a Time-Barred Debt Violate § 1692e**

The Fourth Circuit has not addressed under what circumstances collection attempts on time-barred debts violate the FDCPA. *See Jennings v. Dynamic Recovery Sols. LLC*, 441 F. Supp. 3d 106, 114 (D. Md. 2020). At least two district courts in the Fourth Circuit have held that where a defendant attempted to collect on time-barred debt, and failed to warn the plaintiff about the risk of losing the protection of the relevant statute of limitations, the plaintiff has stated a plausible FDCPA violation. *See Jennings*, 441 F. Supp. 3d at 114 (observing that "[t]he least sophisticated consumer most certainly would not be aware that making a payment could make the debt judicially enforceable—particularly when the collector tells the consumer that the law limits how long she can be sued and that the collector will not sue") (applying Maryland law) (internal quotation marks and citation omitted); *Alston v. Midland Credit Mgmt., Inc.*, Case No. 8:18-cv-14-AMQ, 2018 WL 3309725, at *2–3 (D.S.C. July 3, 2018) (denying motion to dismiss where plaintiffs alleged that defendant violated FDCPA by failing to advise plaintiffs that a

27

partial payment of a debt subject to collection could restart the statute of limitations clock, thus exposing the plaintiffs to a potential lawsuit on the debt) (applying South Carolina law).

Under Virginia law, unlike the state law at issue in *Jennings* and *Alston*, a partial payment on a time-barred debt does not automatically revive the statute of limitations. *See Guth v. Hamlet Assocs., Inc.*, 230 Va. 64, 77 (1985) ("We consistently have held that, standing alone, part payment of the principal or payment of interest does not toll or remove the bar of the statute of limitations.")[15]

In recent years, five of the Fourth Circuit's sister courts have concluded that even absent threats of litigation, it is plausible that offers to "settle" or "resolve" time-barred debts could, depending on the context, mislead an unsophisticated debtor in violation of § 1692e. *See McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014) (declining to "hold that it is automatically improper for a debt collector to seek re-payment of time-barred debts", and clarifying that an FDCPA violation occurs where a "debt collector uses language in its dunning letter that would mislead an unsophisticated consumer into believing that the debt is legally enforceable", such as an offer to "settle"); *Buchanan v. Northland Group, Inc.*, 776 F.3d 393,

---

[15] Untimely claims can, however, be "revived under Va. Code Ann. § 8.01-229(G)(1)" where a party makes a new promise in writing to pay for the debt. *Klein v. Campbell*, No. 22-1497, 2023 WL 3845303, at *10 (4th Cir. June 6, 2023). Va. Code Ann. § 8.01-229(G)(1) provides, in relevant part:

> If any person against whom a right of action has accrued on any contract, . . . promises, by writing signed by him or his agent, payment of money on such contract, the person to whom the right has accrued may maintain an action for the money so promised, within such number of years after such promise as it might be maintained if such promise were the original cause of action. An acknowledgment in writing, from which a promise of payment may be implied, shall be deemed to be such promise within the meaning of this subsection.

Va. Code Ann. § 8.01-229(G)(1).

28

395 (6th Cir. 2015) (holding same); *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507,

509 (5th Cir. 2016) (holding same); *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 425, 429–30

(3d Cir. 2018) (holding same); *Holzman v. Malcolm S. Gerald & Assocs., Inc.*, 920 F.3d 1264,

1272 (11th Cir. 2019) (offer to "resolve" consumer's time-barred debt, combined with deadline

to accept reduced-payment offer and warning that offer might not be renewed, could mislead

unsophisticated consumer regarding the legal status of the debt).[16]

      In *McMahon*, the Seventh Circuit supported this conclusion by explaining that "if a

consumer received an 'offer for settlement' and searched on Google to see what is meant by

'settlement,' she might find the Wikipedia entry for 'settlement offer,'" which includes a

discussion of civil lawsuits. *McMahon*, 744 F.3d at 1021. Thus, the Seventh Circuit reasoned,

"[i]f unsophisticated consumers believe either that the settlement offer is their chance to avoid

court proceedings where they would be defenseless, or if they believe that the debt is legally

enforceable at all, they have been misled, and the debt collector has violated the FDCPA." *Id.* at

1022; *see also Tatis*, 882 F.3d at 428 (citing *McMahon*'s reasoning with approval).

      In 2019, finding *Daughtery, Buchanan, McMahon*, and *Tatis* persuasive, the Eleventh

Circuit "likewise conclude[ed] that with regard to a collection letter seeking payment on a time-

barred debt, an express threat of litigation is not required to state a claim for relief under § 1692e

so long as one can reasonably infer an implicit threat." *Holzman*, 920 F.3d at 1271. On this

basis, the Eleventh Circuit concluded that although the collection letter at issue involved "offers

to 'resolve' the referenced time-barred debt rather than 'settle' it", this amounted to a mere

---

[16] One court reached a broader conclusion in 2001. In *Freryermuth v. Credit Bureau Services, Inc.*, the United States Court of Appeals concluded that an attempt to collect on a time-barred debt is permissible under the FDCPA, but only if done in the absence of a threat of litigation. 248 F. 3d 767, 771 (8th Cir. 2001).

"slight semantic difference", and it was still plausible that such an offer would mislead an unsophisticated consumer into believing that the debt was legally enforceable, thereby violating § 1692e.  903 F.3d at 1272–73.  The *Holzman* court added that the letter "urg[ed] the debtor 'take advantage' of the offer", provided a specific payment deadline, and stated that the defendants "are 'not obligated to renew' the offer." *Id.*  Thus, "an unsophisticated reader might conclude from this language that he [or she] is being presented with an ultimatum, and that failure to make payment within the required time frame would result in negative consequences, such as legal action." *Id.*

> **c.  Count I Plausibly Alleges that At Least Some of MRS's Collection Attempts Would Mislead an Unsophisticated Debtor Into Believing that the Loans Remained Legally Enforceable**

Although this Court is not bound by the Fourth Circuit's sister courts, it nonethetheless finds the majority courts' reasoning in the Third, Fifth, Sixth, Seventh, and Eleventh Circuits when evaluating similar collection attempts to be highly persuasive.  Moreover, their reasoning is consistent with the plain text of the FDCPA.  Section 1692e and its subsections prohibit "not only threatening to take actions that the collector cannot take, but also the use of any false, deceptive, or misleading representation, including those about the character or legal status of any debt." *McMahon*, 744 F.3d at 1020–21.

Here, Ms. Rowland alleges that while speaking to an MRS employee on the phone, the MRS employee "offered a discount to settle the debt [for one of the Loans] for $8,545.00." (ECF No. 10 ¶ 128.)  Additionally, Ms. Rowland attaches six letters from MRS offering various payment options with deadlines to "resolve" the balance on her account, and stating that MRS is "not obligated to renew this offer." (ECF No. 10-11, at 1; ECF No. 10-14, at 1; ECF No. 10-16, at 1; ECF No. 10-17, at 1; ECF No. 10-18, at 1; ECF NO. 10-19, at 1.)  These collection letters

did not include any accompanying disclosure that the debt was judicially unenforceable.[17]  The language used during these collection attempts plausibly could be misleading or deceptive to the "least sophisticated consumer" in violation of § 1692e.  First, an offer to "settle" a debt "implies that the creditor could successfully sue on the debt." *McMahon*, 744 F.3d at 1022.  "If unsophisticated consumers believe either that the settlement offer is their chance to avoid court proceedings where they would be defenseless, or if they believe that the debt is legally enforceable at all, they have been misled, and the debt collector has violated the FDCPA." *Id.*; *see also Buchanan*, 776 F.3d at 395; *Daugherty*, 836 F.3d at 509; *Tatis*, 882 at 425; *Holzman*, 920 F.3d at 1272.

Turning to MRS's collection letters, it is plausible that they would leave an unsophisticated consumer with the same general—and inaccurate—impression as did the letters at issue in *Daugherty*, *McMahon*, *Buchanan*, *Tatis*, and *Holzman*.  By announcing various deadlines and reminding Ms. Rowland that MRS was "not obligated to renew this offer" to "resolve" her "outstanding balance", the letters, like the letter at issue in *Holzman*, may have lead an unsophisticated debtor to conclude that he or she "is being presented with an ultimatum, and that failure to make payment within the required time frame would result in negative consequences, such as legal action." *Holzman*, 920 F.3d at 1272.  As a result, "it is at least plausible that" a portion of MRS's collection attempts were "false, deceptive, or misleading" to the "least sophisticated" recipient, in violation of § 1692e of the FDCPA.  Ms. Rowland plausibly states a claim in Count I on this basis.

---

[17] In support of its Motion to Dismiss, MRS does not challenge whether the Loans were time-barred during MRS's collection attempts, and instead "assum[es] for the purposes of this Motion that" the Loans were, in fact, time-barred.  (ECF No. 29, at 15.)  Similarly, for the purposes of this Memorandum Opinion, the Court will assume that the Loans were time-barred during MRS's various collection attempts.  (*See* ECF No. 10 ¶¶ 136, 166(j).)

    **5.**    **Plaintiff Fails to Plausibly Allege in Count I that MRS Misrepresented the Original Balances of Her Loans**

The Court now turns to the final basis for Ms. Rowland's § 1692e claim against MRS—whether MRS mispresented either the "original loan balance" or "principal amount" of the Loans. (ECF No. 10 ¶¶ 166(i), 166(k), 169.)[18]  In her Opposition, Ms. Rowland acknowledges that "the principal balance" of the Loans "can change over time", and asserts only that MRS is nonetheless liable for misstating the "original loan balance" for each Loan. (ECF No. 44, at 9.) As such, the Court will only consider whether Ms. Rowland has plausibly alleged that MRS misrepresented the original balance of either Loan. As alleged, she has not.

In her Opposition, Ms. Rowland does not identify any paragraph in her Amended Complaint upon which she bases her allegation that MRS misrepresented the "original loan balances." (ECF No. 44, at 9.) Even a favorable reading of the Amended Complaint yields a single conclusory sentence alleging that MRS "provide[d]" Ms. Rowland "different original balance amounts [] for the alleged debt." (ECF No. 10 ¶ 169.) Of the eight letters from MRS attached to the Amended Complaint, all but one are silent regarding the original loan amounts. (ECF Nos. 10-11–10-19).[19]  One letter from June 8, 2022 states that Ms. Rowland financed $15,000 for the 2006 Loan, which is consistent with the allegations in the Amended Complaint.

---

[18] Count II alleges that during phone calls to Ms. Rowland, "it was unfair and unconscionable" for MRS "to provide different original balance amounts in for the alleged debt without informing her that they could not legally sue her for the alleged debt because it was beyond the statute of limitations." (ECF No. 10 ¶ 169.)   The Court has already dismissed Count II to the extent it is duplicative of Count I as to the Loan amounts. The Court considers this allegation to be subsumed within Count I's allegation under § 1692e that more broadly alleges that "Defendant MRS used false, deceptive, or misleading representations or means in connection with the collection of an alleged debt when it . . . made false or deceptive statements to Ms. Rowland during collection calls to her." (ECF No. 10 ¶ 166 (k).)

[19] ECF Nos. 10-11 and 10-13 are identical copies of a June 8, 2022 letter from MRS to Ms. Rowland.

(*Compare* ECF No. 10-11, at 2; ECF No. 10-13, at 2; ECF No. 10 ¶ 93 ("In 2006, [Ms.] Rowland entered into a student loan agreement . . . for $15,000.").)

Ms. Rowland's singular, conclusory allegation insufficiently supports a reasonable inference that MRS misrepresented either Loan's original loan balance. *See Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted) ("'[N]aked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief.'")  The Court will dismiss Count I on this basis, but does so without prejudice.

6.    **As Alleged, Plaintiff Fails to State a Claim in Count II Under 15 U.S.C. § 1692f and 15 U.S.C. § 1692f(1) Premised on MRS Calling Her Workplace**

The Court now turns to the final basis for Ms. Rowland's claims in Count II under 15 U.S.C. § 1692f and § 1692f(1)—that it was "unfair and unconscionable to call [Ms. Rowland] at work . . . and [her] co-workers when [MRS] had her phone number and knew where she lived." (ECF No. 10 ¶ 170.)

Ms. Rowland herself asserts that MRS's calls to Ms. Rowland's workplace offend other provisions of the FDCPA, thereby rendering these allegations under § 1692f improper. *See Lembach*, 528 F. App'x at 304 ([T]he courts use § 1692f to punish conduct that [the] FDCPA does not specifically cover."); *Penn*, 883 F.Supp.2d at 594 (a complaint is deficient where "'it does not identify any misconduct beyond that which [p]laintiffs assert violate other provisions of the FDCPA.'")  The Court will dismiss Count II on this basis without prejudice.

a.    **Legal Standard:  The FDCPA's Limitations on Debt Collection Calls to Third Parties**

Section 1692b[20] of the FDCPA allows a debt-collector to communicate with third parties, including employers and co-workers, for the purpose of acquiring location information about the debtor.  For these calls, § 1692b prohibits, among other things, (1) that the debt collector state that the consumer owes any debt, and (2) that the debt collector call the third-party "more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information."  15 U.S.C. § 1692b.

Relatedly, § 1692c(b) provides:

(b) Communication with third parties

**Except as provided in section 1692b** of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a

---

[19] Section 1692b provides, in pertinent part:

Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall—

(1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;

(2) not state that such consumer owes any debt;

(3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information[.]

15 U.S.C. § 1692b.

consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b) (emphasis added).

As previously articulated, Section 1692f broadly provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." § 1692f. Section § 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." "Congress did not define 'unfair or unconscionable' but did provide a non-exhaustive list of examples." *Penn v. Cumberland*, 883 F. Supp. 2d 581, 593 (E.D. Va. 2012). This non-exhaustive list does not reference calls to a debtor's workplace or while the debtor is at work. *See* 15 U.S.C. § 1692f. "Relying on the plain meaning of the statute's terms, courts have considered an action unfair where it is 'marked by injustice, partiality, or deception,' and unconscionable when it is 'unscrupulous,' 'show[s] no regard for conscience,' or 'affront[s] the sense of justice, decency, or reasonableness.'" *Penn*, 883 F.Supp.2d at 593 (quoting *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200 (11th Cir.2010).)

"[T]he courts use § 1692f to punish conduct that [the] FDCPA does not specifically cover." *Lembach v. Bierman*, 528 F. App'x 297, 304 (4th Cir. 2013). In other words, § 1692f "provides a cause of action only if [a debt] collector's conduct is not covered by other provisions of the Act". *McKinley v. Everest Receivable Servs., Inc.*, No. 19-CV-1289S, 2022 WL 446407, at *13 (W.D.N.Y. Feb. 14, 2022) (citing *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp.2d 643, 667 (S.D.N.Y. 2006)); *see also Penn*, 883 F.Supp.2d at 594 (citing favorably *Foti*'s observation that a complaint is deficient where "'it does not identify any misconduct beyond that which [p]laintiffs assert violate other provisions of the FDCPA.'")

35

**b.   Plaintiff Does Not Plausibly Allege that MRS's Calls Violated 15 U.S.C. § 1692f or 15 U.S.C. § 1692f(1)**

Here, MRS called Ms. Rowland's co-worker to "collect on a debt allegedly owed by [Ms.] Rowland and [her co-signer] William Stanfield." (ECF No. 10 ¶ 123.)  Ms. Rowland does not allege precisely what MRS stated during these calls, but after the calls, Ms. Rowland's co-worker began questioning Ms. Rowland "about the alleged debt[,] which affected her reputation at the company and made her feel completely overwhelmed and harassed." (ECF No. 10 ¶ 124.)  MRS's phone calls also caused Ms. Rowland to feel "very anxious and nervous at work" and "interfered with her ability to focus on work and family life." (ECF No. 10 ¶ 125.)  In late April 2022 MRS continued to call Ms. Rowland's workplace an unspecified number of times. (ECF No. 10 ¶ 127.)  In May 2022, MRS again called Ms. Rowland's workplace at least once. (ECF No. 10 ¶¶ 127–129).  Specifically, on May 23, 2022, an MRS employee "called and again talked to Ms. Rowland's co-worker . . . asking for Ms. Rowland and saying he would call again later." (ECF No. 10 ¶ 129.)

In her Opposition, Ms. Rowland contends that MRS's calls to her workplace are improper because § 1692c(b) prohibits communication with anyone other than the consumer, the consumer's attorney, a consumer reporting agency, the creditor, the attorney of the creditor, or the attorney of the debt collector. (ECF No. 44, at 9.)  As such, Ms. Rowland argues, MRS's attempts to collect on the Loans constitute "unfair or unconscionable means in violation of 15 U.S.C.A. §1692f." (ECF No. 44, at 10.)  Ms. Rowland further notes that she has "has alleged a number of calls to her and her co-worker", and "[t]he number of calls show a sufficient pattern that supports her claim that the Defendants sought to use unfair or unconscionable means to collect a debt from her." (ECF No. 44, at 10 (citing ECF No. 10 ¶¶ 122–29, 131–32).)  Ms. Rowland provides no case law in support of either argument. (ECF No. 44, at 9–10.)

36

As a threshold matter, Ms. Rowland herself asserts that MRS's calls to Ms. Rowland's co-worker offend other provisions of the FDCPA, thereby rendering these allegations under § 1692f improper. *See Lembach*, 528 F. App'x at 304 ([T]he courts use § 1692f to punish conduct that [the] FDCPA does not specifically cover."); *Penn*, 883 F.Supp.2d at 594 (a complaint is deficient where "'it does not identify any misconduct beyond that which [p]laintiffs assert violate other provisions of the FDCPA.'") The Court will dismiss Count II on this basis without prejudice. If Ms. Rowland wishes to amend Count II to include other provisions of the FDCPA, or argue the evidentiary value of time-barred claims, such a request must be made by motion to the Court or by stipulation of the parties.

### C.   Ms. Rowland Fails to State a Claim for Vicarious Liability (Count V)

In Count V, Ms. Rowland asserts a cause of action against Transworld, U.S. Bank, and the Trusts for "Vicarious Liability." (ECF No. 10 ¶ 176.) In a single sentence, Ms. Rowland asserts that these three Defendants "are vicariously liable for the acts of MRS and Convergent since they hired and directed their actions." (ECF No. 10 ¶ 176.)

"Various courts in Virginia have held that vicarious liability is not a separate cause of action in Virginia, but rather, a theory of liability." *Ali v. Coleman*, No. 1:12-cv-560 (CMH), 2013 WL 4040444, at *2 (E.D. Va. Aug. 6, 2013); *see also White v. Punita Grp., Inc.*, No. 1:15-cv-1195 (LG), 2016 WL 1117476, at *7 (E.D. Va. Mar. 18, 2016) (dismissing under Pennsylvania law separate claim of vicarious liability that plaintiffs "clearly presented . . . as a separate cause of action"). Ms. Rowland contends in support of Count V that if the Court "believes vicarious liability should not be listed as a separate claim, it can assume that [Ms.] Rowland meant to assert vicarious liability as a theory of liability for her other claims." (ECF

No. 44, at 20 (citing *See Lim v. Tisack*, No. 7:16-CV-00029, 2017 WL 1194516, at *6–7 (W.D. Va. Mar. 30, 2017) (liberally construing *pro se* plaintiff's complaint).)

If Ms. Rowland wishes to amend Count I "to reflect a vicarious liability theory, such a request must be made by motion to the Court or by stipulation of the parties." *White*, 2016 WL 1117476, at *7.

**D.    As Alleged, Ms. Rowland Fails to State a Claim Under the VCPA (Count VI)**

Finally, the Court turns to the final count in the Amended Complaint—Ms. Rowland's claim for "Unauthorized Practice of Law" brought under the Virginia Consumer Protection Act, Va. Code § 59.1-200(A)(60).[21]   (ECF No. 10 ¶¶ 177–184.)

Ms. Rowland contends, without any citation to case law, that "Virginia courts have definitely found there is civil liability for the unauthorized practice of law under the VCPA." (ECF No. 44, at 19.)  Not so.  Because the "unauthorized practice of law" is not actionable under the VCPA, this claim must be dismissed.

**1.    Legal Standard:  VCPA**

Section 59.1-200(A)(60) provides:

A. The following fraudulent acts or practices committed by a supplier in connection with a consumer transaction are hereby declared unlawful:

\*        \*        \*

60. Violating any provision of § 54.1-111 relating to the unlicensed practice of a profession licensed under Chapter 11 (§ 54.1-1100 et seq.) or Chapter 21 (§ 54.1-2100 et seq.) of Title 54.1[.]

---

[21] The Amended Complaint asserts that the unauthorized practice of law is "prohibited by VC[P]A §59.1-200(60)." (ECF No. 10 ¶ 181.)  The Court presumes this to be a scrivener's error, and will construe this as a reference to VCPA §59.1-200(**A**)(60).

Section 59.1-200(A)(60).  Chapter 11 (§ 54.1-1100 et seq.) regulates construction contractors, and Chapter 21 (§ 54.1-2100 et seq.) regulates real estates brokers, sales persons, and rental location agents.  (*See generally* Va Code. Ann. § 54.1-1100 et seq. and Va Code. Ann. § 54.1-2100 et seq.)  Plainly, Va. Code § 59.1-200(A)(60) does not prohibit the unauthorized practice of law.

More generally, none of the eighty-two enumerated "Prohibited Practices" in Va. Code § 59.1-200(A)(1)–(82) reference the unauthorized practice of law.  This indicates that the unauthorized practice of law is not actionable under the VCPA.  The Supreme Court of Virginia has explained that "[i]n interpreting statutory language, we have consistently applied the time-honored principle *expressio unius est exclusio alterius*, because this maxim recognizes the competence of the legislature to choose its words with care." *Miller & Rhoads Bldg., L.L.C. v. City of Richmond*, 292 Va. 537, 543–44 (Va. 2016) (citation and internal quotation marks omitted).  "Stated another way, the mention of specific items in a statute implies that all items omitted were not intended to be included." *Id.* (citation and internal quotation marks omitted).

### 2.    Because the Unauthorized Practice of Law is Not Actionable Under the VCPA, Count VI Will be Dismissed

In support of Count VI, Ms. Rowland argues that under the VCPA's "catchall provision . . . Va. Code § 59.1-200(14)"—a provision not cited in the Amended Complaint—it is "a *per se* fraudulent act of practice to use any deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."  (ECF No. 42, at 18.)  This position is not supported by case law, which provides that the unauthorized practice of law is not actionable under any section of the VCPA. *See Oberto v. Grogan*, 88 Va. Cir. 188, 2014 WL 8383045 at *2 (2014) (dismissing VCPA claim because the VCPA does not apply to legal services, observing that although "[t]here is no controlling authority on the subject . . . at least

one circuit court decision has held that legal services do not fit the VCPA's definition of consumer services.") (citing *Board of Directors of the Port Royal Condominium Unit Owners 'Ass'n v. Crossland Savings FSB*, 15 Va. Cir. 239, 241 (1989).) The Court will dismiss Count VI. The Court does so without prejudice in order to keep a clear record, but strains to see where Ms. Rowland could state a claim for a violation of the VCPA.

### IV.  Conclusion

For the reasons articulated above, the Court will grant the Trusts' Motion to Dismiss, (ECF No. 24), and U.S. Bank's Motion to Dismiss, (ECF No. 26).  The Court will grant in part and deny in part Transworld and MRS's Motion to Dismiss.  (ECF No. 28.)  All dismissals will be without prejudice.  Convergent has already been dismissed from this action with prejudice. (ECF Nos. 41, 48.)

An appropriate Order shall issue.

Date: 9/30/24
Richmond, Virginia

_____ /s/
M. Hannah Lauck
United States District Judge